## THOMPSON *et al. v.* THE STATE.

1. After charging the jury that they were the "judges of the credibility of the witnesses," the court added: "that is, the truthfulness of the witnesses; and you have the right to take into consideration the manner of the witnesses while upon the stand testifying, their interest or want of interest in the case, their means and opportunities of knowing the facts to which they testified, and their personal credibility, as the same may legitimately appear upon the trial, and such other mental tests are you authorized to apply in determining just what witness or witnesses you will believe in the case." The rule stated is substantially correct, and was not erroneous upon the ground that it was inapplicable in a criminal case.

2. Error is assigned upon the following charge of the court: "In all criminal cases the defendant is authorized to make to you just such statement in his own defense as he sees fit and proper. This statement is not made under oath, but you are authorized by the law to believe the statement in preference to the sworn testimony, provided you believe the statement to be true; or you may believe the sworn testimony in preference to the statement, or a part of one and a part of the other; you being the sole judges of the facts in the case." This charge is not error. It is a substantial restatement of the law contained in section 1036 of the Penal Code, relating to the prisoner's statement and the weight which the jury are allowed to give it. It did not, as the movant complains, express or intimate an opinion of the court as to the truthfulness of the statements of the defendants; nor did it draw any improper distinction between the statements and the evidence in the case; nor did it contain "disparaging statements by the court;" nor did it tend to confuse the jury as to the weight to be given to the statements of any one of the prisoners.

3. The court erred in summarizing the evidence for the State, its claims and contentions, in such a way that the grouping of the facts made the summary argumentative in character, and in such a way as to unduly impress the jury with the horrors of the scene attending the crime with which the defendants were charged.

4. The court erred in instructing the jury that if evidence tending to show that the prosecuting witness was "unchaste before the alleged offense took place," the jury might consider such evidence, "if it was satisfactory to" them (the jury). The restriction should not have been placed upon the consideration of the evidence by the jury.

5. The court erred in charging the jury: "If you find the contentions of the State in this case are true from the evidence, under the rules of

law as given you in charge, then all of the defendants would be equally guilty, and should receive equal punishment at your hands." The jury probably would consider this to mean that precisely the same punishment should be given to each of the defendants; while as a matter of law the jury had the right, under the law relating to indeterminate sentences, to fix the length of the term of confinement in the penitentiary within the limitations prescribed in the statute.

6. The court erred in stating to the jury, in the course of his instructions, that one of the defendants, Harvey Thompson, had admitted in his statement that he "had sexual intercourse with the prosecutrix on the afternoon alleged in the indictment." Even if the statement of this defendant should be construed as admitting that on other occasions he had had intercourse with the prosecutrix, there is nothing in his statement that can be construed as meaning that he had intercourse with her on the particular day named in the indictment. In another part of the charge there was language used by the court which might be construed as an intimation that the defendant Harvey Thompson had admitted that he had sexual intercourse with the prosecutrix on the day alleged in the indictment.

No. 4846. June 20, 1925.

Rape. Before Judge Custer. Ware superior court. February 28, 1925.

*Dickerson & Kelley* and *Parker, Parker & Quarterman,* for plaintiffs in error.

*George M. Napier, attorney-general, A. B. Spence, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

Beck, P. J. Harvey Thompson, Charlie Arnold, and Mark Thompson were indicted and tried for the offense of rape; and a verdict was rendered finding the defendants guilty and fixing their punishment at not less than 15 nor more than 20 years in the penitentiary. A motion for a new trial was duly made by the defendants, and was overruled at the hearing. The plaintiffs in error excepted to that ruling.

1. In the first ground of the amendment to the motion for a new trial error is assigned upon the following charge of the court: "You are also the judges of the credibility of the witnesses; that is, the truthfulness of the witnesses; and you have the right to take into consideration the manner of the witnesses while upon the stand testifying, their interest or want of interest in the case, their means and opportunities of knowing the facts to which they testified, and their personal credibility, as the same may legitimately appear upon the trial, and such other mental tests are you authorized to apply in determining just what witness or witnesses you will believe in the case." This charge is criticised

upon the ground, among others, that it is "largely the preponderance-of-evidence rule as laid down by section 5732 of the Civil Code of 1910." While the language employed by the court is taken largely from the code section referred to, which is generally given as a part of the charge to the jury when the court is instructing them as to what they may consider in determining where the preponderance of evidence lies, the part of the section charged is not inapplicable to a criminal case when charged in connection with that portion of the court's instructions to the jury in which the court is dealing with the province of the jury to determine the credibility of the witnesses who have testified in the case. And in this case, after instructing the jury that they were the "judges of the credibility of the witnesses," the trial judge, in immediate connection therewith, charged the jury in the language of the excerpt excepted to. This charge merely gives to the jury matters that they might take into consideration in passing upon the credibility of the witnesses, and the rules stated are substantially correct, and there is no intimation that they should determine any of the issues in the case adversely to the defendants by a preponderance of the evidence. They were duly instructed that, in passing upon the question as to whether the defendants were guilty or not of the crime for which they were indicted, the jury should be satisfied of their guilt beyond a reasonable doubt. The charge here excepted to was not error upon the ground mentioned, nor for any other reason assigned in the exceptions.

2.    The rulings made in the second headnote require no elaboration.

3.    In one ground of the motion error is assigned upon the following charge of the court: "The State claims and contends that it has brought evidence here showing that about four o'clock in the afternoon of the 7th of December, 1924, that Harvey Thompson took Gladys Smith to ride from her home in Fairfax to Millwood, in this county; that they were riding in a buggy drawn by a mule; that when they came near to a road turning off the main highway, that Harvey Thompson tried to turn the mule off the road into a road leading to a cemetery; that Gladys Smith prevented Harvey Thompson from driving off the main road at that point; that Harvey Thompson drove about a half mile farther, that he seized her around her neck with one hand and with the

other hand drove off the highway into a road leading to a cemetery; that when they got near the cemetery Gladys Smith saw the defendants Charlie Arnold and Mark Thompson there; that these defendants came up on either side of the buggy, and that Harvey Thompson got some tobacco, and that a vile statement was then made; that Gladys Smith sprang out of the buggy; that the defendants caught her; that one of them threw her to the ground; that one of them held her hands; that another held her feet, and that Harvey Thompson got upon her and raped her; that he had sexual intercourse with her then and there, forcibly and against her will; that Gladys Smith was then and there resisting; that she was pleading for mercy; that she was crying and screaming; that she succeeded in getting away from her alleged assailants; that she went directly home; that she immediately told her mother; and that certain physical evidence, the State contends, corroborates her testimony that the offense was committed." The charge is excepted to upon the ground that it is argumentative and "favorable in its argumentative character to the State." We are of the opinion that the summing up of the claims and contentions of the State, the grouping of the facts which the State's testimony tends to establish, and presenting the scene attending the commission of the alleged crime, all combined and considered together, renders that portion of the charge open to the exception that it is argumentative. The summary of the details of the evidence bearing upon the commission of the crime and the horror of the crime would naturally tend to influence the jury at least in passing upon the question of the punishment which they should fix in case they should find the defendants guilty. This charge presents a too vivid picture of an outraged woman attempting to escape from the clutches of her assailants, of the defendants' seizing her, of her being thrown to the ground, of her hands being held by one of the assailants, of her feet being held by another, while a third outraged her; of the appeals of the victim for mercy; and while all this is stated as a part of the claims and contentions of the State, nevertheless the grouping together of the facts presented by the evidence for the State made a picture, vivid in character, that all the horrible features of the scheme brought out in strong relief, by the lights and shadows of the attending events, and we can not escape from the conclusion that this was harmful; especially as

these contentions of the State were presented more elaborately and more forcibly than the counter-claims and contentions of the defendants.

4.   The court charged the jury in part as follows: "Look to the evidence, and if you find that the character of Gladys Smith was unchaste before the alleged offense took place, and if you find there is such evidence satisfactory to you, then you would have the right to consider such evidence, first, as to whether her testimony as to what is alleged that the defendants did is true, and secondly, as to whether she consented for the defendant, Harvey Thompson, to have carnal knowledge of her." There was evidence in the case from which the jury would have been authorized to find that Gladys Smith, the woman alleged to have been outraged, had been guilty of unchaste and immoral conduct with men prior to the date of the alleged offense. Such evidence is admissible to aid the jury in passing upon the question as to the credibility of the prosecuting witness, and in passing upon the question as to whether or not the intercourse with her was without her consent. *Seals* v. *State,* 114 *Ga.* 518 (40 S. E. 731, 88 Am. St. R. 31). And the trial judge correctly instructed the jury as to the purposes for which such evidence is introduced for the consideration of the jury; but he should not have limited the jury, in passing upon the weight of the evidence tending to show the unchaste character of the woman alleged to have been raped, by charging them that they would have the right to consider such evidence if the evidence introduced for that purpose "is satisfactory to" them (the jury). If the evidence upon this subject was of such a character as to raise in the minds of the jury a reasonable doubt as to whether or not the alleged intercourse with the woman was had without her consent, while it might not be entirely satisfactory, it would have been the duty of the jury to have given the benefit of the doubt to the accused.

5.   The court charged the jury as follows: "If you find the contentions of the State in this case are true from the evidence, under the rules of law as given you in charge, then all of the defendants would be equally guilty, and should receive equal punishment at your hands." This charge was error. The jury found the defendants guilty, with a recommendation of mercy, and fixed the punishment at a term of from 15 to 20 years in the peni-

tentiary. In an act approved August 18, 1919 (Ga. Laws 1919, p. 387), entitled "an act to provide for indeterminate sentences," etc., it was enacted by the General Assembly that "the jury in their verdict on the trial of all cases of felony not punishable by life imprisonment shall prescribe a minimum and maximum term, which shall be within the minimum and maximum prescribed by law as the punishment for said crime." The three defendants in this case were jointly tried, and it was the province of the jury to find them all guilty, or find one guilty and acquit the others; and it was also their province, in case they found them all guilty, to prescribe a minimum and maximum term in the penitentiary for each of the defendants, and their cases could be considered separately as to this question, just as they might have been considered separately in passing upon the question of their guilt. It is true that in section 43 of the Penal Code it is declared that "A principal in the second degree, except where it is otherwise provided, shall receive the same punishment that is provided for the principal in the first degree:" and there was evidence in this case authorizing the jury to find one of the defendants guilty as principal in the first degree and the other two guilty as principals in the second degree; and all three having been found guilty, the two who were guilty as principals in the second degree should "receive the same punishment" that is provided for the principal in the first degree. But this does not mean that all the defendants should receive identically the same punishment as to the length of the term of confinement in the penitentiary, which the jury had the right to fix under the law relating to indeterminate sentences. This court has held, in construing section 43 of the Penal Code, that it "merely fixes the limitations of the punishment, and should not be construed to mean that precisely the same punishment shall be given to the principal in the first degree and the principal in the second degree." *Bailey* v. *State,* 153 *Ga.* 413 (112 S. E. 453).

6. In the course of his instructions to the jury the court stated: "The defendant Harvey Thompson in his statement admits that he had sexual intercourse with the prosecutrix on the afternoon alleged in the indictment, but he contends that such intercourse was by her consent. And the defendants bring another witness to show other acts of lewdness." This statement was erroneous, and we can not say that it was harmless so far as relates to the de-

fendant Harvey Thompson. The defendant last named said, in his statement to the jury: "I am not guilty of what they have got me charged with. I have been going to see this girl off and on now for a year and a half, not regular, understand me to say, but off and on, and I have had dealings with this girl ever since I have been going to see her in every respect. And now Sunday afternoon we taken her out—I taken her out myself for a ride, just a joy ride. I asked her parents to go with me if they wanted to. Well, they didn't want to go." Conceding that the language used, that is, "I have had dealings with this girl ever since I have been going to see her in every respect," was an admission that he had had sexual intercourse with her, it is not an admission that on the day upon which it is alleged in the indictment he committed the crime of rape he had intercourse with her. The statement made by the defendant to the jury did not authorize the court's statement to the jury that the defendant Harvey Thompson had admitted in his statement that he "had sexual intercourse with the prosecutrix on the afternoon alleged in the indictment."

There is another part of the charge which might be construed as an intimation by the court that the defendant Harvey Thompson had admitted the act of sexual intercourse with the prosecutrix on the day named in the indictment. The language is as follows: "There might be some confusion in your minds. The defendants Charlie Arnold and Mark Thompson deny that they had anything whatsoever to do with Gladys Smith on the date in question, or at any other time; and you have before you only the contention and charge contained in the indictment, gentlemen. They deny that they had anything to do with her; that, on the contrary, she came there to the cemetery, and that for some reason she got out of the buggy and left; that Harvey Thompson was entreating her to ride home with him; that she was angered for some reason, and went away, and that nothing was done to harm her then and there; and that may also be taken into consideration along with the defense and the contentions of Harvey Thompson." There were three defendants on trial, Charlie Arnold, Mark Thompson, and Harvey Thompson. The court singled out the first two defendants in the order named, and charged the jury that those two defendants "denied that they had anything whatsoever to do with Gladys Smith on the date in question, or at any other time;" and the

jury might have inferred from this that the other defendant admitted that he had had intercourse, or at least that he did not deny it; whereas, as a matter of fact, considering his entire statement, he denied in substance that he had intercourse with her on that day: for in his concluding statement, after having related how the prosecutrix left the vehicle in which they were driving, he said: "I called to them [Charlie Arnold and Mark Thompson] for a cigarette, and Charlie came up with a cigarette and handed it to me; he hadn't been there more than two minutes, nohow, before she jumped out of the buggy, and nobody absolutely put their hands on her then nor now. . . And I followed the girl 400 yards, or more, with the buggy, begging her to get back in, and she wouldn't do it. . . And I followed her on the big road about two hundred yards and begged her, and she again said she would die and go to hell before she would get back in the buggy; and we are absolutely not guilty. We never put our hands on her."

We think, in view of the strong denial entered by this defendant, Harvey Thompson, that the intimation in the charge to the jury that he had admitted having intercourse with the girl on the day alleged in the indictment can not be adjudged harmless.

As the judgment of the court below refusing a new trial is reversed upon the grounds of the motion already considered, it is unnecessary to pass upon the remaining grounds, one of them relating to the refusal of the court to declare a mistrial upon the motion of the defendant, and the others based upon newly discovered evidence.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*