ANDREWS *v.* THE STATE.

86

No. 14493.   April 15, 1943.·   Rehearing denied June 7, 1943.

*Thomas A. Jacobs Jr.,* and *Alene Harden,* for plaintiff in error.
*T. Grady Head, attorney-general, Charles H. Garrett, solicitor-general,* and *L. C. Groves, assistant attorney-general,* contra:

DUCKWORTH, Justice. ■ The constitution of this State (Code, § 2-105)˙ guarantees the privilege and benefit of counsel to every person charged with an offense against the laws of this State. ˎ This constitutional right entitles every one to exercise his own free choice in the selection of the attorney he wishes to employ to represent him. *Martin* v̇. *State,* 51 *Ga.* 567; *Delk* v. *State,* 100 *Ga.* 61 (27 S. E. 152) ; *McArver* v̇. *State,* 114 *Ga.* 514 (40 S. E. 779) ; *Howard* v. *State,* 115 *Ga.* 244˙ (41 S. E.˙ 654) ; *Walker* v. *State,* 194 *Ga.* 727 (22 S. E. 2d, 462). In the present case the defendant in the exercise of this right engaged an attorney of his own choice to represent him on the trial. Having done this, he was not entitled, under the above constitutional provision, to require the court to˙ furnish by appointment additional counsel to represent him upon the trial. The court, however, without request from the defendant or his employed counsel and solely as a voluntary action upon the part of the court, because of the insistence by defendant's counsel made several days before the date set for the trial that she would be unable to prepare the case for trial in the time fixed, both defendant and his employed counsel consenting thereto, appointed an attorney to assist in preparing for trial. In a letter to the defendant's counsel the court stated that he had appointed the additional counsel to assist her in the trial. This action upon the part of the court imposed no legal obligatibn upon the ˙appointed counsel to the defendant to remain in the case until the trial was completed. It imposed a duty only to act in good faith and to the best of his ability during such time as he should remain in the case. Immediately after the trial˙ began, a disagreement over questions of procedure took place

94

between the employed and appointed counsel. This disagreement threatened injury to the defendant's case; and the appointed counsel, being subject to the decisions of leading or employed counsel, informed the court that he could be of no further benefit to the defendant, and requested the court to relieve him from further service. Thereupon, out of the presence of the jury and the defendant, but in conference with the solicitor-general and defendant's employed counsel, the judge released the appointed counsel from further participation in the case, the employed counsel consenting thereto. The rule is well established in this State, that the defendant on trial must be present when the court takes any action materially affecting his case. *Tiller* v. *State,* 96 *Ga.* 430 (23 S. E. 825); *Bagwell* v. *State,* 129 *Ga.* 170 (58 S. E. 650); *Chance* v. *State,* 156 *Ga.* 428 (119 S. E. 303). Movant contends that under this rule it was reversible error for the court to release the appointed counsel out of the presence of the defendant. From what is said above, the appointed counsel was a gratuity to which the defendant had no right. His continued participation in the trial was a matter of which the defendant had no control. His release by the court can not be said to have materially affected the defendant's case. It was a matter about which there was no need to consult the defendant. A regularly employed attorney when appearing in court in behalf of a client is entitled to speak for his client, and the court is required to listen to such counsel and is authorized to deal with counsel in matters relating to the case. In the present case the defendant's counsel agreed that the court might release the appointed counsel. She proceeded with the trial of the case with appointed counsel absent, and neither she nor the defendant objected to so proceeding. No request was made for time and opportunity to engage other counsel. In such circumstances the defendant will not be heard to complain of this action of the court. *Wynn* v. *City & Suburban Railway of Savannah,* 91 *Ga.* 344 (3) (17 S. E. 649); *Stevens* v. *State,* 93 *Ga.* 307 (3) (20 S. E. 331); *Desverges* v. *Goette,* 121 *Ga.* 65 (2) (48 S. E. 693); *Brooks* v. *Camak,* 130 *Ga.* 213 (3) (60 S. E. 456); *Josey* v. *State,* 148 *Ga.* 468 (96 S. E. 1041); *Swain* v. *State,* 162 *Ga.* 777 (6) (135 S. E. 187); State *v.* Briggs, 58 W. Va. 291 (52 S. E. 218). The ground of the motion raising these questions is without merit.

The second special ground is an attack upon the physical and

mental capacity of the attorney who was voluntarily employed by the defendant, and who conducted the trial of the case. We need not here enter upon a discussion as to the right of defendant's counsel employed for the purpose of prosecuting his case in this court to challenge the competency of the attorney who represented the defendant in the trial court while that attorney is regularly licensed to practice law in both the trial court and the Supreme Court, because the question raised by this ground is decisively settled upon another principle. In support of this ground the movant attached the affidavits of two practicing attorneys whose testimony supports the ground, but the solicitor-general produced the affidavits of four attorneys denying the allegations of this ground and testifying to the competency of the attorney. Thus an issue of fact was presented to the judge, who decided that issue against movant and found the attorney to be competent. The judge's decision on this disputed fact is final, and will not be interfered with by this court. *Desverges* v. *Goette,* supra; *Sullivan* v. *State,* 121 *Ga.* 183 (4) (48 S. E. 949) ; *Tolbirt* v. *State,* 124 *Ga.* 767 (53 S. E. 327) ; *Marshman* v. *State,* 138 *Ga.* 864 (76 S. E. 572) ; *Ivey* v. *State,* 154 *Ga.* 63 (7) (113 S. E. 175) ; *Sharpe* v. *State,* 164 *Ga.* 151 (138 S. E. 52).

██ The third special ground contains an affidavit of an attorney who testified that before the trial, at a time when he thought he would be employed as an attorney to try the defendant's case, he talked to Annie Lee Flanders, cautioning her to be sure of her testimony, because it might send the defendant to the electric chair; and she replied: "Don't he belong there? He ought not to have done me that way;" that he talked with her a number of times during his investigation of the case, at all times urging her to tell the truth and impressing her with the seriousness of the case, after which she told affiant that she had made a mistake and had been misunderstood, as she had never intended to positively identify the defendant as her assailant; that she told affiant positively that she could not say with certainty that Sylvester Andrews was one of the men who assaulted her; that Annie Lee Flanders asked affiant what she should do in view of the fact that she had told the grand jury that the defendant had assaulted her, and he told her to tell the truth on the trial and correct any mistake she might have made. The affiant asserts, that he was astounded when he heard her iden-

tify the defendant after she had stated so positively to him that she was not sure that he was one of the men; that he did not feel at liberty to do more than he did, because he was not employed to represent the defendant. This ground contains the affidavits of a number of persons testifying to the good character of the attorney making the affidavit, and an affidavit by the appointed counsel to the effect that he did not know of such testimony while he was in the case. There is no showing that the employed counsel did not know of its existence, but this ground does recite that during the trial the court had the jury retire, and defendant's counsel made some reference to a letter which she had received from Mr. Churchwell, the attorney who makes the affidavit as to admissions by Annie Lee Flanders that she could not identify the defendant, and that thereupon Mr. Churchwell, who was then in the court-room, arose and asked that the letter be produced and all the facts brought out. The solicitor-general suggested that if Mr. Churchwell knew anything material he be permitted to state it to the court. The court granted the request, and Mr. Churchwell, in the absence of the jury but in the presence of movant and his counsel, made to the court a statement of facts substantially the same as those set forth in the affidavit attached to this ground. Thus it is clear that the facts set forth in the attached affidavit do not constitute newly discovered evidence, and under the circumstances can not be regarded as legal ground for granting a new trial. In *Wright* v. *Central Railroad & Banking Co.*, 21 *Ga.* 345, it was said: "Where a party might have given evidence at a proper time, and he sees fit to withhold it from prudential or other considerations, and take the chances of a verdict, it is no cause for a new trial; and it would be of mischievous tendency to grant a new trial, to give the party an opportunity of introducing the testimony after it is ascertained where the cause presses." Standing alone, the testimony of this witness appears to be such as would greatly discredit the testimony of the State's witness Annie Lee Flanders in a material respect. Nothing more appearing, it would seem that the defendant's best interest upon the trial demanded the introduction of this evidence after it was made known to defendant and his counsel. However, there might be any number of good and sufficient reasons why in the exercise of sound judgment the defendant and his counsel did not choose to offer this witness. As an illustration, it might have been that this particu-

lar witness had knowledge of other facts which, if admitted on cross-examination, would have done injury sufficient to counter-balance any benefits the defendant would derive from this testimony. Present counsel recognizes the rule that to constitute ground for the grant of a new trial it must be made to appear that the newly discovered evidence was unknown to the defendant and his counsel at the time of the trial, and could not have been discovered by them in the exercise of due diligence; but, following the theory and contention set forth in special ground 2 to the effect that defendant's counsel was incompetent, the present counsel contends that the evidence is newly discovered in so far as competent counsel is concerned. The ruling on ground 2 settles this question adversely to movant. Ground 3 is without merit.

■ In his opening statement to the jury the solicitor-general stated that the State expected to prove other assaults with intent to rape. Upon the trial the State introduced three white women who testified that the defendant made assaults upon them; and the judge instructed the jury that they would be permitted to consider evidence of the other alleged crimes. Grounds 4, 8, 9, 10, and 15 assign error on this statement, the testimony of these witnesses, and this portion of the charge. In *Cawthon* v. *State,* 119 *Ga.* 395 (5) (46 S. E. 897), it was said: "To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other." To the same effect, see *Barkley* v. *State,* 190 *Ga.* 641 (2) (10 S. E. 2d, 32), and cit. Counsel for movant contends that the other alleged crimes in the present case are so dissimilar to that for which he was on trial and so disconnected that they were inadmissible under the rule above quoted. He cites *Cawthon* v. *State,* supra; *Gay* v. *State,* 115 *Ga.* 204 (41 S. E. 685); *Moose* v. *State,* 145 *Ga.* 361 (89 S. E. 335); *Booth* v. *State,* 160 *Ga.* 271 (127 S. E. 733); *Cox* v. *State,* 165. *Ga.* 145 (139 S. E. 861); *Lanier* v. *State,* 187 *Ga.* 534 (1 S. E. 2d, 405), all of which decisions ruled that admission of proof of other crimes, which were in those cases held to be disconnected from the crime for which the defendant was on trial, was error; but recognized the rule that proof of crimes of a similar nature is admis-

sible for the purpose of identifying the defendant or for showing a common plan or purpose. It is contended that the decision in *Barkley* v. *State,* supra, is in conflict with the decisions cited by movant. This contention can not be sustained. In that case the evidence showed that the defendant and another man had committed the offense of rape on other women in the same vicinity within a period of about a month, and in so doing had surprised and overcome their victims by the same general method. In harmony with the rule recognized in all of the above cases, it was there held that such evidence was admissible. A similar plan with similar methods in the same locality serve both to identify the defendant and to show a common plan or method. None of these grounds of the motion show error.

■ In ground 5 complaint is made because the court, on motion of the solicitor-general, ruled out testimony of Annie Lee Flanders on cross-examination, to the effect that she had never been married, but that she was the mother of a child. Her direct testimony was that she was not married and had never been married, and that she was twenty-two years old and living with some relatives. In *Camp* v. *State,* 3 *Ga.* 417 (3), 422, it was ruled: "On an indictment for an assault with intent to commit a rape, evidence that the person charged to have been injured is in fact a common prostitute, or evidence of reputation that she is a woman of ill fame, may be submitted to the jury, to impeach her credibility, and disprove her statement that the attempt was forcible and against her consent." In the opinion it was said: "It seems that testimony of specific acts of lewdness is not admissible." In *Johnson* v. *State,* 61 *Ga.* 305 (2), a murder case, this court held that it was not error to rule out testimony of defendant's witness to prove that two of the State's witnesses were in the habit of committing adultery together; that it would have been competent to prove their general character; but that it was not permissible to prove specific acts of adultery for the purpose of impeaching them. In *Black* v. *State,* 119 *Ga.* 746 (47 S. E. 370), it was said: "A woman sworn as a witness to prove a rape alleged to have been committed upon her may be impeached by proof of bad repute as to lewdness, but not by evidence of specific acts of unchastity." The ruling of the trial court upon which the quoted ruling was based was one excluding testimony of a witness for the defendant to the effect that the witness had had con-

nection with the woman alleged to have been raped. In the opinion there is a quotation from 3 Greenleaf on Evidence (16th ed.), § 214, to the effect that the female victim of a rape may not be interrogated as to her criminal connection with another man. These rulings were quoted with approval in *Wheeler* v. *State,* 148 *Ga.* 508 (97 S. E. 408), a rape case. In *Smiley* v. *State,* 156 *Ga.* 60 (3) (118 S. E. 713), it was said: "The court did not err in refusing to permit a female witness for the State to answer the question propounded to her by counsel for the defendant upon her cross-examination, seeking to elicit the fact that she was the mother of two bastard children; the rule in this State being that a woman who is sworn as a witness may be impeached by proof that she is a common prostitute, or by general repute that she is a woman of ill fame, but not by specific acts of lewdness." To the same effect, see *Byrd* v. *State,* 187 *Ga.* 328 (5) (200 S. E. 671); *Latimer* v. *State,* 188 *Ga.* 775 (4 S. E. 2d, 631). Under these decisions the court did not err in excluding this testimony. The defendant in the present case did not make the defense of consensual intercourse, and the ruling here made does not mean that in a case where the defendant on trial for rape makes the defense that the female consented, he would not in that event be authorized to question the prosecutrix on cross-examination as to specific acts of unchastity on her part. That question and the question as to the effect of the foregoing decisions as related to it, are left open until a case is at hand requiring their determination.

The foregoing represents the views of the other members of this court, but the writer is unable to concur in that ruling. My views on the question decided are as follows: An indispensable ingredient of the crime of rape where, as here, the female is more than fourteen years of age is want of consent on her part. The burden is upon the State to prove this essential element of the crime beyond a reasonable doubt. The defendant's plea of not guilty and his statement upon the trial that he was not guilty embraced a denial on his part that the female did not consent; and therefore it is my view that the right of the defendant to draw from the prosecutrix on cross-examination an admission that shows prima facie her guilt of specific acts of unchastity is the same, whether the defendant admits the sexual relation charged and contends that it was with her consent, or whether he just simply denies guilt of the crime charged

in the indictment. Indeed a defendant on trial charged with crime need not make any statement or offer any evidence in his own defense, and still the burden is on the State to prove his guilt as charged in the indictment, and the prosecuting attorney is not even allowed to comment upon his failure to make a statement. The following is a brief analysis of the main decisions of this court bearing upon the question now under consideration, most of which are cited in support of the majority ruling. The oldest case cited by the majority is *Camp* v. *State, 3 Ga.* 417. That was a rape case, but the question there presented was whether or not evidence of general reputation for want of chastity could be introduced to impeach the testimony of the female alleged to have been injured; and it was held that such testimony was admissible for that purpose. In the last paragraph of the opinion it was said: "So, also, *reputation* of general bad character is admissible. *It seems that testimony of specific acts of lewdness is not admissible."* (Italics mine.) The last quoted sentence is clearly obiter dictum. There was no question in that case of the right to introduce evidence of specific acts. In *Black* v. *State,* 119 *Ga.* 746 (47 S. E. 370), cited in the majority opinion, the question presented was whether or not a witness would be permitted to testify that he had previously had sexual intercourse with the prosecutrix; and it was held that such testimony was inadmissible, basing the ruling upon the decision in *Camp* v. *State,* supra, where only general reputation was involved. This court there recognized the conflict of authority as to the admissibility of specific acts, and stated that the rule excluding such evidence was regarded as the sounder and would be followed by this court, giving as a reason why that was the sounder view that to allow proof of specific acts might find the female unprepared to repel such charges, and thus cause an injustice. This reason is wholly inapplicable to the question of admissions by such female under cross-examination. If she admits her guilt, no amount of preparation would enable her to disprove and repel those admitted facts. In the opinion is a quotation from 3 Greenleaf on Evidence, to the effect that the woman can not be interrogated as to criminal connections with other persons. This quotation had no application to the question presented in that case, and is nothing more than obiter dictum. In division 2 of that opinion it was held that the trial court did not err in excluding testimony of the prosecutrix in which

she denied that she had had criminal intercourse with other men. Clearly the defendant could not claim that he was injured by the exclusion of testimony that would tend to sustain the prosecutrix.

*Johnson* v. *State,* 61 *Ga.* 305, was a murder case. The matter there ruled on was the exclusion of the testimony of the defendant's witness that two of the State's witnesses were in the habit of committing acts of adultery. In the first place, that was a murder case not involving the question of consent which is involved in a rape case, and it related to testimony of another witness rather than admissions of the prosecutrix under cross-examination. *Wheeler* v. *State,* 148 *Ga.* 508 (97 S. E. 408), was a rape case, and this court quoted for its ruling portions of the opinion in *Black* v. *State,* supra. The facts are not set out in the opinion, but from an examination of the record of file in this court it appears that the trial court allowed a witness to testify that he had had sexual relations with the alleged injured female, but the judge stated in that connection that he did not consider the evidence material. Error was assigned because of the judge's statement with reference to the materiality of the evidence. Thus it is clear that that case did not involve the right of the defendant, on cross-examination, to question the alleged injured female as to specific acts of unchastity. *Smiley* v. *State,* 156 *Ga.* 60 (118 S. E. 713), was a murder case. There for the first time this court, citing as authority for its ruling some of the cases above referred to, held that under the rule that specific acts of unchastity could not be shown for the purpose of impeaching a female witness it was not error to refuse to allow the defendant's counsel, on cross-examination, to ask a female witness for the State if she was the mother of two bastard children. That being a murder case, the consent of the female witness was not involved, and proof of specific acts or admissions thereof by a female witness would not necessarily show that she was unworthy of belief. I think that decision has no application to the question here presented, and, if applicable, is unsound in that it misapplied the rule excluding specific acts. Also it was concurred in specially by two of the Justices, and hence is binding authority only on the judgment rendered, and not on the particular rulings made in the opinion. In *Willis* v. *State,* 144 *Ga.* 831 (88 S. E. 208), it was ruled that a female witness could not be cross-examined as to her chastity where that matter was not relevant. That was a murder case, and

the ruling so made does not sustain the majority opinion on the question now under consideration. The rule announced in *Black* v. *State,* supra, was asserted with approval in *Byrd* v. *State,* 187 *Ga.* 328 (200 S. E. 671), which was a rape case; but the question there decided was whether or not the court erred in repelling evidence offered by the defendant to show the reputation of the house in which the prosecutrix lived before the crime. No question of the right of the defendant to interrogate the prosecutrix on cross-examination was involved.

The ruling in *Latimer* v. *State,* 188 *Ga.* 775 (4 S. E. 2d, 631), in one view was to the effect that the injured female could not be cross-examined as to specific acts of unchastity. I believe, however, that case is distinguishable because of the fact that the female alleged to have been raped was a girl nine years of age, thus being one who under the law is incapable of consenting. True, after observing that the question of her consent was not involved, this court stated that on her general credibility as a witness she could not under the rule be interrogated on cross-examination as to specific acts of unchastity. The vital difference between that case and the present is that there consent could not be given, and want of consent constituted no part of the crime of rape, whereas here an essential ingredient of the crime charged was the want of consent of the female; and where the question of consent is involved, it is very illuminating on that question for the jury to know whether the female is a pure virgin or whether she has at some previous time surrendered her virtue. It amounts to no argument to say that there is a possibility that the prosecutrix in the present case had been seduced, and that her illegitimate child was the result of that seduction, and for this reason she ought not to be required under cross-examination to disclose the fact that she had such a child. Sufficient answer to such reasoning is that if this or other facts and circumstances were true, she could have so stated to the jury, and thus avoided the damaging effect of her testimony. The defendant was interested only in exercising his right to discredit her by drawing from her damaging admissions on cross-examination. It is my opinion that the foregoing analysis of the decisions demonstrates that it has never been ruled by this court, in a case presenting the question for decision, that in the trial of a rape case the defendant would not be allowed while on cross-examination of the prosecutrix,

who was over fourteen years old, to interrogate her as to whether or not she had previously committed specific acts of unchastity. The right of one being tried for crime to subject every witness testifying against him to a thorough and shifting cross-examination is given by statute. Code, § 38-1705. This is an important right. It should not be restricted to the point of excluding examination on a matter so vital as that of the chastity of the complaining female in the trial of a rape case. While it is true that a prostitute may be the victim of a rape, yet the fact that she is a prostitute affords much help to the jury in deciding whether or not she gave her consent. All legal trials are conducted for the purpose of ascertaining the truth, and the rules of evidence are framed with the view of obtaining that evidence from the purest sources. Code, § 38-101. Any circumstances relating to the transaction under investigation upon the trial, which afford a fair presumption as to that matter, are admissible in evidence. *Keener* v. *State,* 18 *Ga.* 194 (5) (63 Am. D. 269); *Hunter* v. *State,* 43 *Ga.* 483 (3). No jury would say that the circumstance that the prosecutrix, according to her own admission, had previously committed acts of unchastity would not afford a "fair presumption" as to her consent; and if so, under the decisions last cited it would be admissible. In *Wheeler* v. *State,* 112 *Ga.* 43 (3), 45 (37 S. E. 126), where a witness for the accused had admitted on the witness stand that she had led a life of great moral turpitude, this court said: "No attempt had been made by the State to impeach her . . by proving such facts; but as they appeared from the evidence which fell from her own lips, the jury had the right to take them into consideration when considering and weighing her testimony." In *Seals* v. *State,* 114 *Ga.* 518 (40 S. E. 731, 88 Am. St. R. 33), it was held that, aside from her credibility, the jury might consider the previous unchastity of the female on the question of her consent.

·It is a well-established rule of law that a witness may be impeached by proof of conviction of a crime involving moral turpitude. *Coleman* v. *State,* 94 *Ga.* 85 (21 S. E. 124); *Killian* v. *Georgia Railroad & Banking Co.,* 97 *Ga.* 727 (2) (25 S. E. 384); *Powell* v. *State,* 122 *Ga.* 571 (2) (50 S. E. 369); *Howard* v. *State,* 144 *Ga.* 169 (2) (86 S. E. 540); *Groves* v. *State,* 175 *Ga.* 37 (3) (164 S. E. 822); *Whitley* v. *State,* 188 *Ga.* 177 (5) (3 S. E. 2d, 588). The fact that the crime for which the conviction was had

was a specific act, and not general reputation; has never been held to constitute ground for excluding the record of the conviction. Whether or not acts of unchastity on the part of a female involve moral turpitude, her guilt of such acts, in reason and human experience, reflects as much discredit upon her testimony on the question whether or not she consented to another act of sexual intercourse as would a conviction of the crime involving moral turpitude, in the cases above cited, upon the defendant in such cases.

It may be said that to allow an interrogation of the female in rape cases as to specific acts of unchastity might cause her great embarrassment, without there being any basis of fact for the interrogation. I concede that such an evil is possible; but, on the other hand, to deny the right to the accused of drawing from the female making the accusation an admission of her previous acts of unchastity would not only be embarrassing to the defendant, but would seriously threaten his life. Hence, in deciding on what the rule should be, it is necessary to make a choice between these two evils; and I submit that the choice is not difficult, because any injury suffered by the female may be repaired, while to impose the injury upon the accused the injury may be irreparable, for his life may be forfeited. This question is dealt with at length in 1 Wigmore on Evidence (3d ed.), 682, § 200. Many decisions, both for and against the rule excluding such testimony, are there reviewed, and it is said: "In England the precedents were for some time opposed to the use of such evidence; but later it came to be admissible, subject to a limitation intended to avoid the objections of Unfair Surprise and Confusion of issues, i. e. by allowing only the inquiry on cross-examination of the complainant, and by excluding extrinsic testimony." After reviewing several decisions in the various States of this country, it is said (p. 687) : "But modern psychology warns us to be liberal in investigating the moral attributes of women who make complaints of sexual outrages. The prudence and the necessity of examining thoroughly the past conduct of the woman-complainant in such cases, in order to protect the accused against false charges, is now amply understood by the medical profession, and should be conceded by the law of evidence." On the same subject see 1 Wharton's Criminal Law (12th ed.), 1006, § 737. In a court of justice having the power to take human life, on the trial of a case to determine whether a life shall be forfeited, it

is my deliberate opinion that any rule of evidence that would prevent the accused, while cross-examining the female on whose testimony his life may be forfeited, from drawing from her an admission that she had previously committed acts of unchastity is without justification, unless it can be said that such admissions in no wise reflect upon the credibility of her testimony to the effect that the intercourse was forcibly and against her consent. I am confident that no one familiar with the trial of cases will say that such admissions do not tend to discredit her testimony on that vital issue. It does not strengthen confidence in the law to allow the State to prove specific acts against the defendant, as is done in division 4 of the opinion (to which I fully agree), and on the same trial deny to the defendant the right to prove specific acts of the prosecutrix, his accuser. For these reasons I must dissent from the majority ruling; and it is my opinion that the court erred in excluding the testimony of the prosecutrix, and that a new trial should have been granted.

■ Ground 6 sets forth a series of questions propounded to Sadie Butler, defendant's witness, answers of the witness, and objections by the solicitor, the final question being: "Do you know what reputation she [Annie Lee Flanders] bears?" The witness answered: "She bears a reputation she have a child five years old and she is a grown woman." On objection this evidence was ruled out. The exception asserts that this ruling was error, it being insisted that the answer means that Annie Lee Flanders had a bad reputation. The accused had a right to prove the general reputation of the State's witness in the community in which she resided (*Seals* v. *State*, 114 *Ga.* 518, 40 S. E. 731, 88 Am. St. R. 33; *Towns* v. *State*, 149 *Ga.* 613, 101 S. E. 678), but the testimony here excluded does not come up to that rule. If it be said that being the mother of a five-year old child is bad, then the testimony excluded relates to a specific act, and is not admissible for the purpose of impeachment, under the ruling in division 5 of this opinion. There is no merit in this ground.

■ Ground 7 complains of the ruling excluding certain testimony offered by the defendant's witness Miss Alene Harden, who was his counsel. The witness had been accused of coercion and threats by the State's witness Annie Lee Flanders. The witness, after referring to a letter which she had received from Mr. Church-

well, stated that she went to Churchwell's office on Monday morning, "and he informed me that the prosecuting"—Here the State's objection to any conversation was sustained. The witness then stated: "It fitted in the fact that when the prosecuting witness sent for me in the hall"—This statement was excluded on objection. The witness then stated: "I heard some rumors"—Objection to this statement was sustained. The witness then stated: "I went to the prosecutrix's house once with the wife of Sylvester Andrews, for the reason that she said she wanted to see us. She was not there, but her aunt told us"—The State's objection to what the aunt told her was sustained. Movant contends that the purpose of this testimony was to explain conduct, and, conceding it was hearsay, that it was admissible for the purpose for which it was intended. In support of this contention the movant cites the Code, § 38-302, which provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." And *Bryant* v. *State,* 191 *Ga.* 686 (14) (13 S. E. 2d, 820), where it was held that it was error to exclude testimony of a witness as to his conversations with other persons, "where counsel for the defendant stated to the court at the time of the exclusion that he expected to show by other evidence that these 'conversations were reported to the defendant,' and that 'because of said conversations [the defendant] remained away from the city . . until a later date.' " This ground does not show what were the conversations to which the witness referred; and hence it is impossible to say whether or not the rulings complained of were harmful to movant. It is not made to appear that the witness had in mind conversations that would in any wise explain her conduct in talking to the prosecutrix. No offer was made by movant to produce other witnesses to show that such conversations took place, or that they affected the conduct of this witness. This ground is without merit.

■ The plaintiff in error complains of excerpts from the judge's charge relating to impeachment, as follows: (Ground 11) "I charge you that among other methods a witness may be impeached by proof of contradictory statements previously made by a witness which are relevant to the issue on trial and to the case. If a witness is successfully impeached you would discard from your consideration

his or her testimony in its entirety, unless it is corroborated by other unimpeached evidence or by credible circumstances in the case." (Ground 12) "When a witness has been successfully impeached, that is to say, his unworthiness of credit has been established to the satisfaction of the jury, the testimony of that witness should be rejected entirely, unless it is corroborated as to material matters by other competent and credible evidence, or is corroborated as to material matters by the facts and circumstances of the case as you find them to be." (Ground 22) "I charge you, it is the exclusive province of the jury to determine the credibility of all witnesses; and when an effort is made to impeach a witness, the jury then become the triors of the credibility of the witness sought to be impeached, and accordingly the jury have the right, under all the attendant facts, circumtances, and conditions, to determine whether or not credit shall be given to the witness whose credibility has been attacked, and thereupon the jury decides whether the witness has or has not been impeached." It is contended that the charge excepted to in ground 11 was prejudicial to the defendant, because it instructed the jury to disregard the testimony of any witness for the accused who was proved to have made a previous contradictory statement, unless such witness was corroborated. The charge is not subject to this criticism. It instructs the jury to disregard the testimony of a witness when and only when that witness has been impeached and his testimony has not been corroborated by other evidence. The charge excepted to in ground 22 instructs the jury that they are the sole and exclusive judges as to whether or not any witness has been impeached. It is argued by counsel that the only witnesses it was sought to impeach by proof of previous contradictory statements were two of the defendant's witnesses. We fail to see where it makes any difference whose witnesses it is sought to impeach. The same rules apply to the subject of impeachment, without regard to whose witnesses they may affect. However, the record discloses that a vital witness for the State, Annie Lee Flanders, the prosecutrix, made contradictory statements while on the witness-stand; and the charge is applicable to her. The charge is in substantial accord with the language of the Code, § 38-1802, which declares that "A witness may be impeached by disproving the facts testified to by him;" and of § 38-1803, where it is said that "A witness may be impeached by contradictory statements previ-

108

ously made by him as to matters relevant to his testimony and to the case." The charge expressly stated that the court was undertaking to give only two of the methods by which a witness may be impeached; and it is not contended by movant that any attempt was made by either side to impeach any witness by any of the other methods provided by law. Thus the ground fails to show any injury resulting from the court's failure to instruct the jury on other methods of impeachment. The charge further instructed the jury that if a witness was successfully impeached they should disregard his testimony in its entirety unless it was corroborated by other unimpeached evidence. This charge is not in conflict with the Code § 38-1806, that "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury." There is a material distinction between the words "contradicted" and "impeached." The jury alone determines whether or not a witness has been impeached, although the evidence shows that such witness has made contradictory statements. The charge is not subject to any of the attacks made upon it.

The charge complained of in ground 12 is not subject to any of the attacks made upon it. When the jury has decided that a witness has been impeached (and the jury decision is the method by which a witness is "successfully impeached"), and the jury has found that he is unworthy of belief, his entire testimony should be disregarded unless corroborated, as the judge recites. The charge does not, as contended in this ground, instruct the jury that as a matter of law they should disregard the testimony of a number of the defendant's witnesses who may have made statements contradictory to their testimony. Nor does the charge justify the contention that it omits any reference to the materiality of the previous statement. Such contention is in direct conflict with the language of the charge complained of in ground 11, that a witness may be impeached by proof of contradictory statements "which are rele-vant to the issue on trial and to the case." The charge is not subject to the criticism that it fails further to instruct the jury in terms of the Code, § 38-1806, as follows: "But if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." It is not contended by movant that any witness testified wilfully and knowingly falsely; and thus it is not

made to appear that the court would have been authorized to, charge the jury on this principle of law. Nor is the charge subject to the criticism that it limited the jury to a consideration of the evidence alone in determining whether a witness had been impeached, because it failed to instruct the jury that they had a right to consider all other matters, including the interest or lack of interest of witnesses, their demeanor on the stand, and their opportunity of knowing the facts, and also the defendant's statement. This contention ignores the fact that the court elsewhere instructed the jury that they were authorized to believe the defendant's statement in preference to the sworn testimony in the case; and that, immediately preceding the three instructions on impeachment here complained of, the court charged that in passing on the credibility of the witnesses the jury could consider the witnesses' manner on the stand, their means and opportunity for knowing the matters about which they testify, their interest or want of interest, their intelligence or lack of intelligence, the nature of the matters to which they testify, their bias or prejudice, if any, and also their personal credibility as the same may legitimately appear from the trial of the case; also their relation to the case or to the parties in the case. Thus it is clear that this assault is entirely groundless.

The charge complained of in ground 22 makes it the exclusive province of the jury to determine the credibility of witnesses. This accords with the Code, § 38-1805, which declares: "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." It further makes the jury the triors of the credibility of a witness when an effort has been made to impeach that witness, and correctly states that the jury decide whether or not a witness has been impeached. The attacks upon the charge are (a) that it withdrew from the jury all rules of law applicable to impeachment of witnesses and authorized them to credit any testimony they saw fit, irrespective of whether it had been shown to be credible or not; (b) that the court gave no rule of law to determine the credibility of witnesses; and (c) that it limited the jury to a consideration of the evidence, thus restricting the defendant's statement, and failed to instruct the jury to consider the credibility of witnesses as the same may appear on the trial. The applicable rules of law had already been given the jury, and this charge simply instructed the jury as to their duty in determining the ques-

tion of impeachment and credibility of witnesses, of course under the rules of law as previously given. The charge must be considered as a whole, and isolated excerpts are not subject to attack because they fail to contain other portions of the charge. *White* v. *State,* 147 *Ga.* 377 (94 S. E. 222) ; *Thompson* v. *State,* 160 *Ga.* 520 (128 S. E. 756) ; *Shankle* v. *Crowder,* 174 *Ga.* 399 (163 S. E. 180) ; *Aycock* v. *State,* 188 *Ga.* 550 (4) (4 S. E. 2d, 221). None of the instructions set out above are subject to any of the attacks made. *Reed* v. *State,* 163 *Ga.* 206 (135 S. E. 748) ; *King* v. *State,* 163 *Ga.* 313 (9) (136 S. E. 154).

■ Ground 13 complains of the portion of the charge where the court said: "The indictment alleges that Sylvester Andrews, alias Sylvester Hall, alias Reindeer, hereinafter referred to as the accused or the defendant, did commit the offense of rape  . ." It is contended, that there was no evidence to show that the defendant had ever been known by any name except Sylvester Andrews; that it was error to allege any such alias in the indictment, which was done manifestly to embarrass the accused and impress the jury with the idea that he was a bad person and traveled under different names; that the court should not have referred to any allegation in the indictment that had not been proved by evidence; that the court should have eliminated these prejudicial allegations from the indictment, and should have told the jury that there was no evidence that the accused ever went under any such names. It is obvious that in the instruction complained of the court was merely referring to the contents of the indictment. In the absence of a motion or request, it was not incumbent upon the judge to tell the jury what had or had not been proved. It is admitted that the name of the accused is Sylvester Andrews, one of the names appearing in the indictment. In *Jenkins* v. *State,* 4 *Ga. App.* 859 (3) (62 S. E. 574), it was said: "Where a defendant is indicted under two names, alleged by an alias dictus, it is necessary only that the State should show that he is commonly known by either of them." Under the facts in this case a plea of misnomer under the Code, § 27-1505, could not have been sustained. It was held in *Stinchcomb* v. *State,* 119 *Ga.* 442 (46 S. E. 639) : "Where an accused person is indicted, with an alias, under more than one name, a special plea of misnomer, to be good, must aver unequivocably that the accused has never been known by either of the names set out in the indictment,

and that neither is his true name." It was further said in the last cited case: "If the grand jury is uncertain which of the several names is the real name of the person, he may be indicted under an alias dictus." While, as contended by movant, the appearance of an alias in an indictment might reflect unfavorably on the accused, it is the settled law of this State that the grand jury may so indict the accused, either when he is known by different names or when the grand jury is uncertain as to which of a number of names is his true name. The purpose of giving the name is to identify the accused. If this law is abused by an unjustifiable resort thereto by the grand jury, the accused has opportunity upon the trial to prove that he has never had an assumed name, and that he has never been known by the names given in the indictment aside from that which he admits is his true name. The sole complaint in this ground is the statement by the judge as to what is contained in the indictment. What the judge said was said in the indictment which went out with the jury, and which they were permitted to read. Whatever might be said as to the justice of the rule permitting an indictment in this form, no sound argument can be made against the right of the judge to state the content of the indictment, when no attack of any kind has been made upon that indictment. There is no merit in this ground.

■ Ground 14 assigns error on a portion of the charge defining a reasonable doubt to be one based upon a reason, one for which a reason can be given; not a fancy or conjecture or supposition that the defendant might be innocent, but such a doubt as a reasonable man would have and would act upon or decline to act upon in a matter of importance to himself; that it is a doubt of a fair minded impartial juror honestly seeking for the truth; and that it may arise from a consideration of the evidence, or from a lack of evidence, or from a conflict of evidence, or from the statement of the defendant; and that if, after considering all the facts and circumstances of the case, giving the defendant's statement such weight and credit as they might think it entitled to receive, the minds of the jury are wavering, unsettled, not satisfied, then that is a reasonable doubt under the law; that if, after considering the evidence and the defendant's statement or the defendant's statement alone, a doubt rests upon the minds of the jury, they should give the defendant the benefit of the doubt and acquit him, but if, on the other

hand, no such doubt rests upon the minds of the jury, it would be equally their duty to return a verdict of guilty. The attack upon the charge is, that it unduly restricted and limited the ways in which a reasonable doubt may arise; that a reasonable doubt is a factual question for the jury and ought not to be defined, limited, or restricted by the court; that it tended to unduly depreciate the doubt that may have been created in the case; and that it may have caused the jury to believe that the burden was upon the defendant to create a doubt as to his guilt. The charge accords with the Code, § 38-110. It is not subject to the criticisms made. *Fletcher* v. *State,* 90 *Ga.* 468 (2) (17 S. E. 100) ; *Merritt* v. *State,* 152 *Ga.* 405 (110 S. E. 160) ; *Holmes* v. *State,* 194 *Ga.* 849 (22 S. E. 2d, 808).

█ Grounds 16, 17, and 18 complain of excerpts from the charge, but the judge certifies that each of them was given at the request of movant and is in the exact language requested. In these circumstances the movant has no right to complain, and this court will not consider the complaints. *Cochran* v. *State,* 113 *Ga.* 736 (6) (39 S. E. 337) ; *Howard* v. *State,* 115 *Ga.* 244 (4) (41 S. E. 654) ; *Coleman* v. *State,* 141 *Ga.* 731 (4) (82 S. E. 228).

█ Grounds 19 and 20 assign error on the court's failure to give in charge to the jury the law applicable to an assault with intent to rape and assault and battery, lesser offenses embraced in the indictment for rape. It is insisted that charges on these offenses should have been given, because the testimony of the prosecutrix, Annie Lee Flanders, was contradictory, equivocal, and impeached by contradictions on the trial; and that since the charge of rape necessarily includes the lesser offenses of assault with intent to rape and assault and battery, it was the duty of the court to charge on the lesser offenses. An indictment for rape necessarily includes the lesser offenses of assault with intent to rape and assault and battery. *Speer* v. *State,* 60 *Ga.* 381; *Goldin* v. *State,* 104 *Ga.* 549 (30 S. E. 749) ; *Watson* v. *State,* 116 *Ga.* 607 (43 S. E. 32, 21 L. R. A. (N. S.) 1). And where the evidence shows the lesser offense, it is proper to charge on the lesser offense. *Peters* v. *State,* 177 *Ga.* 772 (171 S. E. 266) ; *Whitley* v. *State,* 188 *Ga.* 177 (2) (3 S. E. 2d, 588) ; *Holmes* v. *State,* 194 *Ga.* 849 (22 S. E. 2d, 808). In the present case the testimony of the prosecutrix makes a case of rape or nothing. If her testimony is believed, the offense

of rape was committed, and there was no assault with intent to rape or assault and battery. It was not error, under the evidence, to omit to charge on these lesser offenses.

■ Ground 21 complains of the following instruction: "I charge you, gentlemen, that in passing upon the credibility of the witnesses you are authorized to consider the witnesses' manner on the stand, their means and opportunity for knowing the matters about which they testify, their interest or want of interest in the case, their intelligence or lack of intelligence, the nature of the facts to which they testify, their bias or prejudice, if any, and also their personal credibility as the same may legitimately appear from the trial of the case. You may also consider the witnesses' relation to the case or to the parties to the case. All of these things, gentlemen, are proper subject-matters for your consideration, in so far as they may legitimately appear from the trial of the case." This charge is in substantial accord with the Code, § 38-107, which states the method of determining where the preponderance of the evidence lies. While it is ordinarily inapt to charge this section in a criminal case, it is not ground for reversal if the instructions appear to be harmless. *Grant* v. *State,* 122 *Ga.* 740 (5) (50 S. E. 946) ; *Gale* v. *State,* 135 *Ga.* 351 (5) (69 S. E. 537) ; *Helms* v. *State,* 138 *Ga.* 826 (5, 6) (76 S. E. 353). The rules stated in this section and given in charge are applicable in determining the credibility of witnesses. *Bell* v. *State,* 47 *Ga. App.* 216 (2) (169 S. E. 732). The movant in other grounds contends that other portions of the charge relating to impeachment were erroneous because they did not contain the instructions here given; but counsel for movant argues in his brief that the charge is erroneous and hurtful because the court failed to charge that the jury might consider the improbability of the testimony and made no reference to the number of witnesses; and it is insisted that when the court undertook to give this section in charge it was error to fail to give it in its entirety. It must be remembered that the court was here charging, not on the preponderance of the evidence, but on the credibility of witnesses. The court was not bound to delineate to the jury every item set up in the Code section applicable to civil cases in determining where the preponderance of the evidence lies. *White* v. *State,* 147 *Ga.* 377 (94 S. E. 222) ; *Schumpert* v. *Carter,* 175 *Ga.* 860 (5) (166 S. E. 436) ; *Garner* v. *Wood,* 188 *Ga.* 463 (3) (4 S. E. 2d,

137); *Sconyers* v. *State,* 67 *Ga. App.* 902 (3) (21 S. E. 2d, 504). This ground is without merit.

 Ground 23 does not have unqualified approval of the judge, and therefore it will not be considered by this court. *Hatcher* v. *State,* 176 *Ga.* 454 (4) (168 S. E. 278).

The verdict is supported by the evidence, and the general grounds of the motion for new trial are without merit.

*Judgment affirmed. All the Justices concur, except*

DUCKWORTH, J., who dissents from the ruling in division 5 of the opinion, and from the judgment of affirmance.