### PETERS *v.* THE STATE.

No. 9773. OCTOBER 12, 1933.

*Albert G. Foster*, and *Miles W. Lewis*, for plaintiff in error.

*M. J. Yeomans*, attorney-general, *C. S. Baldwin Jr.*, solicitor-general, *B. D. Murphy* and *J. T. Goree*, assistant attorneys-general, contra.

GILBERT, J. The indictment charged the defendant with the offense of rape, in that the accused "with force and arms did unlawfully, in and upon one . . . , a female, in the peace of God and

said State then and there being, violently, forcibly, and feloniously make and assault, and her, the said [female], then and there forcibly and against her will feloniously did ravish and carnally know, and did then and there unlawfully beat the said [female], contrary to the laws of said State, the good order, peace, and dignity thereof." The indictment was attacked by demurrer on the grounds: "(1) No offense against the laws of Georgia is set forth therein. (2) The indictment seeks to charge the defendant with two separate and distinct offenses, to wit, one of rape on the person of [the named female], and the other of assault and battery of the person of [the female], in one and the same count of the indictment." Obviously there is no merit in the first ground of the demurrer, unless the second ground required quashing the indictment. "As a general rule, an indictment charging two or more distinct and separate offenses in one count is bad for duplicity. However, different grades of the same offense may be charged in the same count. *Long* v. *State*, 12 *Ga.* 293; *Davis* v. *State*, 57 *Ga.* 66; *Gilbert* v. *State*, 65 *Ga.* 449. See *Sutton* v. *State*, 124 *Ga.* 815 (53 S. E. 381), and cases cited; 14 R. C. L. 194 § 40." *Outz* v. *State*, 154 *Ga.* 542 (114 S. E. 707).

*Sutton* v. *State*, supra, was a case of assault with intent to rape. In *Moore* v. *State*, 151 *Ga.* 648 (108 S. E. 47), the defendant was indicted for the offense of rape. In that case the court said: "It is conceded that a verdict of assault, or of assault and battery, or of assault with intent to commit a rape, may be founded upon an indictment for rape. An assault or assault and battery is necessarily involved in every case of rape. *Speer* v. *State*, 60 *Ga.* 381, 382; *Goldin* v. *State*, 104 *Ga.* 549, 551 (30 S. E. 749); *Watson* v. *State*, 116 *Ga.* 607 (43 S. E. 32, 21 L. R. A. (N. S.) 1)." Thus it seems well settled that an assault and battery is necessarily involved in every case of rape. If the lesser offense is necessarily involved, it can not be error to include it in the allegations of the indictment; and if the evidence so authorizes, the issue of the minor offense must be submitted to the jury by the court under proper instructions. In *Fields* v. *State*, 2 *Ga. App.* 41, 45 (58 S. E. 327), the Court of Appeals through Judge Russell, now Chief Justice of this court, discussed the precise question of alleging the lesser offense in the indictment, citing a number of the decisions of this court. The charge was assault with intent to rape; and it was said: "It is

alleged that the court erred in failing to charge upon the subject of assault and battery. It is well settled that where a charge of graver character includes minor offenses, if the evidence will justify or require a verdict finding the defendant guilty thereof, it is the duty of the judge to instruct the jury as to the principles of law applicable to the lesser offense, and that the defendant may be convicted thereof if in the opinion of the jury he be guilty of such lesser grade of the same generic offense. This general rule is to be qualified to the extent that the lesser offense must either necessarily be included in the greater by a charge in the indictment, or, if it may or may not be, then the averments of the indictment describing the manner in which the greater offense was committed must contain allegations essential to describe the lesser offense. The whole subject is discussed in *Watson* v. *State,* 116 *Ga.* 607 (43 S. E. 32), and the cases of *Wilson* v. *State,* 53 *Ga.* 205, *Hopper* v. *State,* 54 *Ga.* 389, *Bard* v. *State,* 55 *Ga.* 319, *Trowbridge* v. *State,* 74 *Ga.* 431, *Malone* v. *State,* 77 *Ga.* 767, *Jenkins* v. *State,* 92 *Ga.* 470 (17 S. E. 693), and *Bell* v. *State,* 103 *Ga.* 401 (30 S. E. 294, 68 Am. St. Rep. 102), are there cited as authority." It will be seen from the *Moore* case, supra, that the rule is not different where the indictment is one for rape instead of assault with intent to rape. It follows that the court did not err in overruling both grounds of the demurrer to the indictment.

■ The motion for a new trial contained one special ground, complaining that the court erred in admitting the following evidence of the husband of the injured female: Q. (by the solicitor-general) : "Before coming into court and prosecuting this case, I will ask you whether you talked to Willie Peters' wife, your sister, about it?" A. "Yes." The criticism is that the evidence would be hearsay, and that the defendant's wife, not being a competent witness, could not testify either directly or indirectly against him. This ground is obviously incomplete, as the only answer of the witness was "yes." The effect of the question and the answer was merely that the witness had "talked" to the wife of the defendant. Nothing whatever of what the wife said is known. Consequently it can not be held that any hearsay evidence was admitted or that the wife testified directly or indirectly.

■ The judgment refusing a new trial is reversed solely on the ground that the verdict is not supported by evidence. According to

the evidence of the State, the rape was committed in the home of the accused and in the presence of his wife. Children of the accused and of the injured woman were playing outside of the house near by. The accused, according to the testimony of the injured female, was drunk or drinking. It does not appear that there was any outcry or any serious and persistent resistance. The injured female swore: "He picked me up and carried me into the far room in there and threw me across the bed, and he was afraid the children would come in, and he told his wife to go shut the doors, and he picked me up and carried me into the other room, and she closed the kitchen door and then came in that room and closed that door. She was in the room where I was at last, sitting down by the window, looking out of the window, watching for the children. The children were out at the barn at that time. My little boy was out there. Willie had two children then. Their ages were about three and a year and a half, I guess. They were out at the barn too. They went out there because he sent them out there, told them to go out there and hunt eggs. When he carried me in this last room he put me on a bed and had intercourse with me. I objected. I let him do it because I couldn't help it; I fought with him until I was exhausted and I had to give up. I did not consent for him to do it. He completed this intercourse. After he completed it I got up and went out of the house to the toilet, and he got up and followed me out. He said to me out there that he was not satisfied. I told him to hitch my mule up and let me go home. I got my mule hitched up." The accused went home with the injured female and spent the night there, the husband of the latter and the accused drinking whisky together. The alleged victim did not tell her husband when she got home, her explanation being that she knew when she told him one or the other would be killed and she did not know but that it might be her husband. After the accused and his people left the home of the alleged victim she told her husband. The accused admitted that he had sexual intercourse with the complaining woman, but he asserted that it was done with her consent. The evidence against the accused, if believed, would support the verdict. However, it is of such extraordinary character that it bears on its face the earmark of the unbelievable. That one will commit a rape in the presence of his own wife, herself enciente, upon her sister-in-law, is so unlikely that under the evidence in this case it was error not to grant a new trial.

Irrespective of the differing views of the Justices, whether a conviction of rape can be sustained upon the uncorroborated evidence of the female (the case not falling within the act of 1918), the evidence is insufficient. It is assumed from all of the facts that the injured female was above the age of consent. The writer's judgment is based solely on the ground that the evidence in itself is unsatisfactory and insufficient on the question of resistance to the alleged assault, and that the evidence tending to show that the act was committed against the consent of the female fails in that strength which should be required in a case of this kind.

*Judgment reversed. All the Justices concur.*