27874. CHASTAIN *v.* THE STATE.

DECIDED MARCH 15, 1940. REHEARING DENIED MARCH 30, 1940.

*W. W. Armistead, Hamilton McWhorter Jr., Howard B. Payne,* for plaintiff in error.

*A. S. Skelton, solicitor general, Joel Cloud, Raymonde Stapleton,* contra.

GUERRY, J. The victim testified substantially as follows: A friend had invited her to have supper and the defendant came to carry her in an automobile to the friend's home. She did not know the defendant, and would not go with him at first. He told her he was all right because her friend would not have sent him for her if he were not; and she went with him. They started out on the road toward the friend's house, but afterward turned around and started toward Elberton, to which she objected. He first stopped the car on the side of the road about four miles from Elberton. "He slipped over right close to me and grabbed me. I told him I wanted to get out there and wanted to go back home. . . He said, 'We are going to the picture-show anyway.'" He then started off, and stopped a second time about a mile from the place where they had first stopped. "The second time he stopped he stopped on the side of the road, and he just slipped right close to me and grabbed me. I holloed. He put his hand over my mouth, and told me not to hollo any more—that he would kill me if I did. And I holloed anyway. . . We stopped there a pretty good while, and he knocked my head against the car—the side of the car, and he twisted my wrist, . . and he cursed me. . . He wasn't drinking any at the time, and wasn't under the influence of intoxicating liquor. Then he just grabbed my dress and pulled it up, and I commenced screaming. While he was pulling my dress up I was screaming, and he didn't have his hand over my mouth. About that time a car came along, and I holloed at the car, and the car stopped above our car. When it started I holloed again, and it back-backed. He said, 'If you stop, I will kill you.' He was speaking to the negroes in the car, but I didn't know who they were. When he told them that they went on." The next place he stopped was on the Falling Creek bridge toward Elberton, and "he choked me and tried to smother me, and he cursed me. I tried to get out of the car, and he wouldn't let me get out anyway I tried." He next stopped in front of Mr. Rough's house on this side of the bridge toward Elberton, and he again attempted to have intercourse with the witness. He left

there and stopped again on the other side of Mr. Hutchins's. He tore her dress, and "He finally got me down there in the car on the front seat. We stayed there about thirty minutes." He weighed about 175 pounds and she weighed about 114. "When the car stopped [on the other side of Mr. Hutchins's] I was on my side, and he was under the steering-wheel, and he took me up and dragged me across his lap, and I got under the steering-wheel, and he got on my side, and he put my arm through the steering-wheel. He tried to throw me back, and I scuffled with him a while, and he finally got my back on the seat and me down on the seat. He got me down—threw me down on the seat, and he raped me when he got me on the seat. . . I scuffled with him all the time until he got me to where I couldn't scuffle. He held me down, and I couldn't do anything. I didn't yield to him, and never did yield to him. . . This intercourse happened on the front seat of the automobile at the time he actually ravished me. . . At the time this act of intercourse took place the door of the car wasn't open on the front seat; the car was closed." During the trip "he stopped on the road five or six times and every time the proceedings were interrupted by passing automobiles." She testified that after he allegedly ravished her, he drove on to her house and put her out about thirty yards from the house, and it was still raining.

In his statement the defendant said that on the occasion of this automobile ride he stopped twice, and on each of these occasions she was willing for him to have intercourse with her, and that although "I got on my knees and unbuckled my belt and pulled down my pants . . I lay there some ten or fifteen minutes . . I couldn't get up courage to have intercourse with her." He stated that he never at any time attempted to have carnal knowledge of the witness forcibly and against her will, nor did he actually perpetrate the crime of rape, nor did he ever actually have intercourse with her. Other witnesses corroborated her statements as to time and place, and the fact that they heard a girl screaming in an automobile which was passing the witnesses. On being carried home by the defendant she immediately reported the matter to her mother. She was crying, and there were bruises on her arm and scratches on her leg and neck, and her garments were torn. She was carried to a doctor within two hours from the time she reported the matter to her mother, and the doctor examined

her. He testified: "In the examination of [the young lady] I found no bruises or abrasions or swelling about the labia; there were no bruises about the vagina; there were no bruises, contusions, or redness or swelling about the lips of the female organ. She had slight bruises on her left arm. . . The only scratches I noticed were on each leg on the inner side. I made as thorough examination as I could without making a microscopic examination. I have no doubt in my mind as to what I have testified to. . . I saw no bruises or contusions which would indicate sexual intercourse." The victim, on cross-examination after having testified that "he raped me down on the seat," was asked what she meant when she said "he raped me." She replied: "I don't know—he raped me; we stayed there about fifteen minutes after he got me down on the seat, and we left." It was also shown that a warrant sworn out on the same night was for an "attempt of rape," though this was explained by the justice of the peace as a mistake in issuing the warrant.

Complaint is made that the court erred in charging the jury on assault with intent to rape, as it was contended that the evidence showed conclusively that a rape was committed on the female. The first case cited in support of this position is *Kelsey* v. *State,* 62 *Ga.* 558, 559. The court said: "The evidence showed that intercourse was had between the parties, the points of contest being whether the defendant used force," and "There is absolutely no evidence of an *unsuccessful attempt*—of a mere assault with intent to commit a rape. . . There was either rape or fornication." In such a case a verdict of attempt to rape would have been without evidence to support it, for the reason, as stated, that "the evidence showed that intercourse was had between the parties," thus showing conclusively that carnal knowledge had been realized. In the present case the defendant admitted that he had tried to have carnal knowledge, but was unsuccessful. The doctor testified that from an examination made within three hours of the alleged rape *he saw nothing to indicate that the victim had had sexual intercourse.* While it is true that the victim testified that she was raped, she said also she did not know what she meant when she said "he raped me." The defendant's statement and *the doctor's testimony* prevented the evidence of the State from being conclusive of the fact that a sexual intercourse was had between the victim and

the defendant. A portion of the victim's evidence certainly supported a verdict of assault with intent to rape. The jury were authorized to accept that portion and reject the other parts of her evidence, which were not conclusive, that the act had been completed. An analysis of the facts reported in all the cases cited in the brief of the plaintiff in error will disclose that there was presented either an entire denial by the defendant of the whole occurrence or a defense that the act done was with the consent of the female, the statement being made that the evidence as to the commission of the acts was *conclusive*. In *Welborn* v. *State,* 116 *Ga.* 522, 524 (42 S. E. 773), it was said: "No evidence was had as to any criminal assault save that which was included in the commission of the rape." In *Rich* v. *State,* 33 *Ga. App.* 153 (126 S. E. 154), it was said: "Though the person outraged swears that the crime of rape was actually committed by the prisoner, yet where an attempt is made to impeach her testimony, and her age and the circumstances surrounding the criminal act render her testimony on this subject doubtful, the jury may disregard it and find the accused guilty of an assault with intent to rape, there being overwhelming evidence of such assault." We think this language peculiarly applicable to the evidence in this case. The evidence as to the actual commission of the act in this case was certainly not *conclusive,* as in the cases cited, but was overwhelming as to the fact of the assault for such purpose. A girl eighteen years old is persuaded by a false statement made to her to enter an automobile with a married man thirty-one years old, to go to a friend's house. The defendant admits making an attempt to have sexual intercourse with the victim. He states that it was with her consent. Her evidence, which is amply corroborated in time and place and other circumstances, is that his advances were unwelcome, and that force was used in attempting to have connection with her. Her testimony as to what she meant by "he raped me" is not clear. A young and innocent girl subjected to such treatment as, according to the evidence, she received on this occasion may well have believed that she had been raped, when in fact the act had not been consummated. The doctor's evidence, together with the defendant's statement, was sufficient to prevent her evidence from being conclusive as to the consummation of the act. We think the

evidence amply authorized the verdict, and warranted the charge given to the jury by the court.

Judgment affirmed. *Broyles, C. J., concurs.*

MacIntyre, J., dissenting. While under some of our criminal statutes more than one offense may be committed in the same transaction, and the accused may be convicted of either of the offenses, yet we have in this State a statute that inhibits a conviction of the defendant of an assault or attempt when the crime is actually perpetrated, as follows: "No person shall be convicted of an assault with intent to commit a crime, or of any other attempt to commit any offense, when it shall appear that the crime intended, or the offense attempted, was actually perpetrated by such person at the time of such assault, or in pursuance of such attempt." Code, § 27-2508. The victim's testimony was the only testimony that went directly to the criminal act, and hers was the only positive evidence as to the commission of the crime charged. Her testimony was that the crime of rape was actually committed by the defendant. It seems to me the evidence conclusively shows that all that happened on this two or three-hour automobile ride, previously to the last stop before returning to the victim's home, at which stop the rape was actually committed, were merely preliminary efforts in pursuance of a desire to have carnal knowledge of the female forcibly and against her will, which efforts constituted acts of manipulation of the person, instigated by a single impulse and culminated in the completed crime of rape. That is to say, the various handlings of the person of the victim were so closely connected in time and character as to show conclusively that they were mere component parts of the one entire offense or criminal transaction which the law calls rape. In other words, all the criminal acts on this two or three-hour automobile ride were done in an effort or attempt to commit one rape, and "in pursuance of such attempt" (Code, § 27-2508) or attempts. The crime all along intended was actually perpetrated, or, if you will, completed.

Relatively to the testimony of the victim, she does not pretend that she was not raped on the automobile ride, but contends that she was. And yet the jury have found that she was not raped, but that there was a mere attempt to rape. The defendant contends that there was no carnal knowledge of the female either forcibly or otherwise. There was no reason disclosed by the evi-

dence why her testimony should be cut in twain by the jury. *Kelsey* v. *State,* 62 *Ga.* 558. "The jury are not at liberty to accept the testimony of the prosecutrix that an assault was made upon her person, and at the same time arbitrarily reject her testimony, equally positive, that the defendant had sexual intercourse with her, forcibly and against her will. The case differs from a case of assault with intent to rape. It rarely happens that an assault is accompanied by such overwhelming and conclusive evidence of the intent with which it is committed as to require the jury to find that the assault was made with the intent to commit a rape." *Moore* v. *State,* 151 *Ga.* 648, 663 (108 S. E. 47). The doctor's testimony was in effect that the victim's hymen had been ruptured, and this could have been caused by things other than penetration during the commission of the crime here charged. The fact that the testimony of the doctor may be viewed as tending to support the defendant's theory is immaterial. His testimony relates merely to the condition of the prosecutrix (the victim) after the commission of the alleged offense, and does not disprove the statement testified to by her that there was a penetration. There was no request for charge to the jury, and hence it was not reversible error to fail to charge on the theory of the defense resting solely on the defendant's statement. *Richards* v. *State,* 114 *Ga.* 834 (40 S. E. 1001). However, the charge here being rape, and the evidence, if credible, showing conclusively that the offense of rape was actually perpetrated, a verdict finding the defendant guilty of assault with intent to rape was unauthorized. The court committed error in charging the jury on the subject, and the verdict of assault with intent to rape was contrary to law. *Rich* v. *State,* 160 *Ga.* 513 (128 S. E. 666); *Peters* v. *State,* 177 *Ga.* 772 (171 S. E. 266); *Watson* v. *State,* 116 *Ga.* 607 (43 S. E. 32, 21 L. R. A. (N. S.) 1); *Barton* v. *State,* 58 *Ga. App.* 554 (199 S. E. 357). I think a new trial should have been granted.