A90A1448. CLARK v. THE STATE.
(398 SE2d 377)

BIRDSONG, Judge.

Willie Samuel Clark appeals his conviction for rape. He cites nine alleged errors below, principally the insufficiency of the evidence to convict him.

The eighteen-year-old victim testified that on August 22, 1989, at about 10:45 a.m., she was waiting at a MARTA bus stop to go to take an examination for her GED certificate. She had missed her bus and waited an hour or more. Appellant stopped his maroon Cadillac Seville and offered a ride. At first she said no, but then decided appellant looked harmless, and she accepted the ride. While driving, appellant chatted with her about her GED exam. He said he was driving someone else's car and he asked her if she minded if he "went by there" to do some business. The victim explained she needed to reach the Adult Education Center by 12:00. Appellant drove to some condominiums, parked and went inside. He came back and told the victim someone wanted to meet her. She believed him, although at trial she said she was "being naive." She went inside the condominium and sat at the dining table. When appellant attempted to coax her to the bedroom, she became frightened and tried to leave, but he caught her and held her by her upper arms and dragged or lifted her to the bedroom. She kicked at his legs, to no avail. When he placed her on the bed, he talked to her as if he wanted to be her boyfriend saying he would not hurt her but that she needed someone to "love" her. When she saw a large kitchen (butcher) knife on a chair nearby, she became afraid he would kill her and consented because of fear. Afterwards, he drove her to the AEC. She went along with his conversation because she was frightened but decided to jump from the car if he changed direction.

When he deposited her at the AEC curb, he repeated that he would like to see her again and asked for her telephone number. She gave him a "fake" number, which was actually her mother's number, and went inside the building. A teacher in the building saw the victim get out of the car. As she entered the building, she appeared to be in "some kind of trauma." Her face was gray, she was trembling but seemed "frozen." The teacher asked her if something was wrong and the victim did not reply; the witness spoke three times before the victim said she had to call the police. Her voice was high and "tinny," and she appeared highly upset. The witness took her to the secretary's office; her hand felt ice cold. She was shaking "just sobbed, it was free sobbing, like heavy sobbing." This witness did not know the victim.

The secretary testified that "the little girl" was very nervous and upset and crying. She seemed very disoriented, "very, very frightened." Her words were disjointed, but she did say, "I was afraid. I was afraid that he was [going] to kill me." The secretary feared the girl was going into shock. She also said, "He threatened me, he scared me, I was afraid that he was going to kill me." She kept saying, "I need to let my boyfriend know what happened. I need someone with me." This witness did not know the victim.

After she gave police a statement, she was driven to the condominiums, where she pointed out the red car and the residence. The detective pounded on the door with his fist for ten or fifteen minutes before appellant came out. Appellant consented to a search; a knife was found in a folding chair in the bedroom with clothes strewn over it. The victim identified appellant as the rapist when he exited the building; she was then taken to Grady Hospital. The examining physician collected specimens with the "rape kit"; she found sperm but no "trauma" and no bruises.

Appellant testified that he offered the victim a ride, and decided to "take a shot" at asking her to have sex with him. He was depressed over a spat he had with his girl friend. He told the police that he did think it was "rather strange" the girl would agree to have sex, but that the sex was consensual. *Held*:

1. On appeal of a criminal conviction, the appellant is no longer indulged with the presumption of innocence, for the jury has rendered its verdict; we do not weigh the evidence or determine the witness' credibility but construe the evidence to uphold the verdict. *Rios v. State*, 193 Ga. App. 485 (388 SE2d 527). Thus, we only determine whether the evidence is such as to enable any rational trier of fact to find the defendant guilty of the crime charged beyond a reasonable doubt, and we find so in this case. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Ingram v. State*, 192 Ga. App. 196, 198 (384 SE2d 262).

Inasmuch as the guilty verdict on appeal is found to be supported by the evidence, it necessarily follows that appellant was not entitled to a directed verdict of acquittal. A directed verdict of acquittal is authorized only where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, "shall demand" a verdict of acquittal. OCGA § 17-9-1; *Garrett v. State*, 184 Ga. App. 715, 716 (3) (362 SE2d 423). Compare *Sheffield v. Kirkley*, 184 Ga. App. 877, 878 (363 SE2d 68); *Sheffield* uses an "any evidence" standard for reviewing a denial of directed verdict on appeal, but when we have held the evidence sufficient to support the guilty verdict it is unnecessary to use an "any evidence" test.

2. Appellant contends the rape kit was improperly admitted in evidence because the State did not prove chain of custody. However, the State did prove the chain of custody. There was no evidence of tampering or substitution, and the fact that the officer who transported the sample did not remember this particular sample, does not suggest any. See *Hicks v. State*, 187 Ga. App. 671, 672 (371 SE2d 145).

3. Appellant contends the trial court erred in refusing to give certain jury charges. The trial court's charge as given is correct. It does

not, as appellant contends, shift the burden to appellant to prove the victim's consent to sexual intercourse.

The charge was not error for failing to state that the jury must find the victim's fear was "reasonable." See *Curtis v. State*, 236 Ga. 362, 363 (223 SE2d 721). The Supreme Court addressed this proposition in *Kemp v. State*, 226 Ga. 506, 507-509 (175 SE2d 869). Lack of consent negates any "consent" and renders the act rape. To suggest the State must prove the victim's fear was "reasonable" amounts to no more than saying a person must, and is deemed to, consent to any sex act so long as she "reasonably" ought not to be afraid. In fact, it is logically impertinent to suggest that such an act is not rape because *proven fear* was "unreasonable," for it is each person's right not to engage in a sex act except by voluntary choice.

Appellant asserts that the element of reasonableness is "mandated," because "[i]f the [victim's] intimidation or fear is not evident to the reasonable person, then it would not be evident to the putative rapist, and, absent an understanding that the internal thinking of the alleged victim is distorted by fear or intimidation, there is no intent and therefore no rape." These hypotheses merely raise issues of fact as to whether the victim can reasonably be deemed to have *consented* to the act. The defendant is not required to "read the victim's mind" or understand her internal thought processes; he is only required not to impose sex upon her without her free consent. Whether he did so is a question of intent, which the jury determines according to the *reasonableness of her testimony as to lack of consent*, not the reasonableness of her fear.

In *Oakes v. State*, 201 Ga. 365, 374 (39 SE2d 866), the Supreme Court said: " 'Courts and juries are not bound to believe testimony as to facts incredible, impossible, or inherently improbable. Great physical laws of the universe are witnesses in each case, which can not be impeached by man. . . .' '[I]n such cases the testimony of the [victim] should always be scrutinized with care; and when there is much in the facts and circumstances in evidence to *discredit her testimony*, it should be deemed insufficient to sustain a verdict of guilty. . . .' " (Emphasis supplied.) In *Peters v. State*, 177 Ga. 772, 775 (171 SE 266), the court held: "The accused [asserted the] sexual intercourse . . . was done with [the victim's] consent. The evidence against the accused . . . is of such extraordinary character that it bears on its face the earmark of the unbelievable." It was thus the victim's testimony going to the question of *consent* which was determined "unbelievable," i.e., unreasonable. If it is reasonable to believe the victim *did not consent* in this case but complied out of fear, it is immaterial that the defendant thought her fears were "unreasonable." The trial court correctly refused to give the charges requested by defendant.

4. The trial court did not err in admitting photographs of the

scene. None of these photographs was irrelevant or prejudicial. See *Carter v. State*, 192 Ga. App. 726 (386 SE2d 389). The testifying officer explained that she found the knife in the chair, but with some clothes strewn on top. The officer's removal of the clothes to photograph the knife does not render the photo inadmissible, but goes to its weight. See *Byrd v. State*, 182 Ga. App. 284 (355 SE2d 666).

5. The trial court did not err by cautioning the jury to consider with great care the defendant's statement. In the context of the entire charge, this did not amount to an indication of the trial court's opinion as to the statement, and did not suggest a negative view of it.

6. Appellant complains of certain intrusive questions on the State's cross-examination of him. The scope of cross-examination rests largely with the trial court; considering that cross-examinations generally are given wide berth, we will not interfere with the trial court's discretion unless it is clearly abused. See *Claypool v. State*, 188 Ga. App. 642 (373 SE2d 765). The State did not "drag in" improper evidence of appellant's character.

7. Appellant contends a witness should not have been allowed to testify as to what the victim "appeared to know." However, the witness only stated what she observed, which was that the victim appeared not to notice her or hear her questions. A witness can testify as to an apparent state of mind after testifying to the facts and circumstances of the conclusion. *O'Kelley v. State*, 175 Ga. App. 503 (333 SE2d 838).

8. It was not error to fail to charge that the position occupied by a witness, such as police officer, does not itself give greater force, weight and credit to his testimony over the testimony of other witnesses. The charge given as to credibility of the witnesses was full and correct. *Vasquez v. State*, 182 Ga. App. 850 (357 SE2d 302); *Pratt v. State*, 180 Ga. App. 389 (348 SE2d 922).

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

## On Motion for Rehearing.

Appellant contends we misunderstood his argument as to the State's failure to prove chain of custody of the rape kit. Appellant complained on appeal that some items which the forensic expert testified she received in the kit were "[not] mentioned" by the examining physician, but this failure of the physician to mention putting in the kit every item the forensic witness had noted as having received, does not suggest tampering or contamination. At best, it indicates a failure of the physician to remember every item she placed in the kit. Appellant's objection to the exhibit at trial was based only upon the inability of the transporting officer to remember this kit among 13 transported. Appellant did not object at trial that the rape kit evidence

was irrelevant because he did not dispute the fact of intercourse, or that the absence from the kit of some of the items, including a tampon, was somehow incriminating or caused prejudice in the jury's mind which resulted in the guilty verdict. None of the items which the doctor failed to mention was in the kit when it was given to the jury, and none of them was material to the question of the victim's consent. This includes the "used tampon," which the forensic expert did not describe or explain, and to which she neither attached any evidentiary significance nor was asked for any. There is therefore nothing in the record to show that any of the items had any probative value, or what such probative value it might have had by being absent from the kit as it was given to the jury.

Appellant insists that based upon a remark, which we regard as gratuitous, made in *Curtis v. State*, 236 Ga. 362, 363 (223 SE2d 721), the jury should be given the opportunity via the jury charge to determine whether the victim's apparent consent to intercourse was "induced by reasonable apprehension, or whether such apprehension was unreasonable and . . . pretextual." *Curtis* most assuredly did not mean to create an opportunity for a rape defendant to argue that the victim's fear of intercourse with him was "unreasonable," and that therefore he should not be found guilty of rape even though lack of consent was proved beyond a reasonable doubt. Whether the victim's stated fear is *pretextual* is another matter; this goes to the question of consent, and, as we clearly held, the jury may take into account evidence that is incredible or "is of such extraordinary character that it bears on its face the earmark of the unbelievable." *Peters v. State*, 177 Ga. 772, 775 (171 SE 266). As to the issue of consent, the victim's testimony as to her fears may be examined for its *credibility*, but not for its *reasonableness*. The jury may find her testimony as to *consent* is unreasonable, but it would be error to allow the jury to determine the reasonableness of her fears.

*Motion for rehearing denied.*

DECIDED SEPTEMBER 11, 1990 —
REHEARING DENIED OCTOBER 19, 1990 —

·John H. Tarpley, Corinne M. Milsteen, for appellant.

Robert E. Wilson, District Attorney, Barbara B. Conroy, Desiree L. Sutton, J. Michael McDaniel, Assistant District Attorneys, for appellee.