**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 12, 2016**

# In the Court of Appeals of Georgia

A16A0966. MACK v. THE STATE.

PETERSON, Judge.

Chandler Mack appeals from the denial of his motion for new trial following his convictions for rape, armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. Mack argues that the evidence was insufficient to sustain his convictions for rape and aggravated assault, and that the trial court erred in failing to instruct the jury on the crime of pointing a firearm as a lesser-included offense of aggravated assault. We affirm Mack's convictions in part because the evidence was sufficient to support his rape conviction. Because Mack's conviction for aggravated assault should have merged with his armed robbery conviction, we vacate his aggravated assault conviction and his sentence and remand

the case to the trial court for resentencing, which moots his challenges to his aggravated assault conviction.

"On appeal, the evidence must be viewed in the light most favorable to support the verdict, and the appellant no longer enjoys a presumption of innocence." *Culver v. State*, 230 Ga. App. 224, 224 (496 SE2d 292) (1998) (citation omitted). So viewed, the evidence shows that the victim, who said she worked part-time as a paid "companion for older lonely gentlemen," went to a DeKalb County apartment complex after receiving a midnight phone call soliciting her services. Mack met the victim in the parking lot, took her into an apartment, and led her to the bedroom. Mack talked to co-defendant Anthony Celestine while the victim sat on the bed in the bedroom. Mack entered the bedroom, leaned over the bed, pulled out a gun, and directed the victim's attention to the gun while it was pointed at her.

Upon seeing the gun, the victim put her hands in the air and said, "You can have it all. I don't have nothing." Celestine had walked into the bedroom by this time. Celestine and Mack (the "Defendants") began to go through the victim's purse and call her banks to determine whether she had any available money. The Defendants took the victim into the bathroom where the lighting was better. Mack continued to rummage through the victim's purse, Celestine told the victim to take her clothes off,

2

forced her to spread her legs, and inserted his finger inside her vagina. Celestine then directed the victim back into the bedroom, at which time she "begged him to put on a condom" because she knew what was about to happen. Celestine put on a condom and had sex with the victim.

Celestine went to the bathroom after he was finished, and the victim put on her clothes and went to the living room where Mack had been sitting. When Celestine joined them in the living room, he and Mack began sending text messages to people that had called the victim's phone in an attempt to lure them to the apartment to rob them. At some point, Mack unbuckled his trousers and asked the victim to perform oral sex on him. The victim repeatedly asked Mack not to make her do that. Mack then directed the victim to the bedroom, where she begged him to put on a condom before having sex with her. Celestine kept the gun while the victim and Mack were in the bedroom.

After Mack and the victim finished having sex, they returned to the living room, and the victim told the Defendants that she had to go home because her aunt was taking care of her daughter. The victim also told the Defendants that she had to go to her job at a warehouse and that her aunt and her employer would know something was wrong if she did not return home soon. The Defendants discussed

3

taking the victim to and from work and pimping her after she left her job. They allowed the victim to call her aunt,[1] and the victim made arrangements to meet her aunt at a nearby gas station to pick up her daughter. The aunt became alarmed and called 911 because the victim never telephoned at 3 a.m. to ask for her daughter and she seemed nervous and afraid.

The victim and Celestine left the apartment complex and drove to the gas station. While the victim and Celestine waited at the gas station, 911 dispatch called the victim for her location, and the victim pretended to be talking to her aunt. Several police officers later arrived at the gas station, approached the victim's vehicle, talked to Celestine and the victim, and then attempted to arrest Celestine. When one police officer placed a hand on Celestine, he pushed the officer and began to run. The officers gave chase and apprehended Celestine when he fell. The victim subsequently gave a description of Mack to a detective, and the detective composed a photo-lineup of several individuals. The victim identified Mack in the photo lineup and also made an in-court identification. The victim testified that she did not consent to sex with Mack or Celestine, and that she did what she was told because the Defendants had a gun and she believed they would shoot her if she did not comply.

---

[1] The victim's "aunt" was a long-time friend.

4

1. On appeal, Mack argues that the evidence was insufficient to convict him of rape because there was no evidence of force or intimidation and the evidence shows that victim willingly agreed to have sex. He alternatively argues that he could not be convicted as a party to the crime of Celestine's raping of the victim. We conclude that the evidence was sufficient to establish that Mack raped the victim.

When we review challenges to the sufficiency of the evidence, "[w]e neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Otuwa v. State*, 319 Ga. App. 339, 339-40 (734 SE2d 273) (2012) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (99 S. Ct. 2781, 61 LE2d 560) (1979)) (punctuation omitted).

"A person commits the offense of rape when he has carnal knowledge of ... [a] female forcibly and against her will[.]" OCGA § 16-6-1(a)(1). Carnal knowledge is statutorily defined as "any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1(a). The term "forcibly" means the use of "acts of physical force, threats of death or physical bodily harm, or mental coercion," and the phrase "against her will" means without the victim's consent. *Ponder v. State*, 332 Ga. App.

5

576, 580 (1) (b) (774 SE2d 152) (2015) (*citing State v. Collins*, 270 Ga. 42, 43 (508 SE2d 390) (1998)) (footnote omitted).

Here, there is no dispute that Mack had sexual intercourse with the victim, and the victim testified that the sex was not consensual. Although there is no evidence that Mack used physical force against the victim, the victim testified she generally agreed to the Defendants' requests because they had a gun, which Mack had previously pointed at her, and she believed they would shoot her if she did not comply. Lack of resistance, induced by fear, is force within the meaning of OCGA § 16-6-1(a)(1), and intimidation may be a substitute for force. *See Derr v. State*, 239 Ga. 582 (1) (238 SE2d 355) (1977); *Curtis v. State*, 236 Ga. 362, 362 (1) (223 SE2d 721) (1976). The victim's testimony that she did not consent to sex and did not resist the Defendants' directions to have sex because she was afraid was sufficient to sustain Mack's conviction for rape. *See* OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Ellis v. State*, 316 Ga. App. 352, 356 (729 SE2d 492) (2012) (the jury was authorized to conclude that the defendant raped the victim when the victim explained she had sexual intercourse only because the defendant had a knife in his hand).

Mack argues that the State did not prove beyond a reasonable doubt that the victim was intimidated into sexual intercourse because she refused his request for oral sex without suffering any repercussions and, therefore, she had no reason to believe that she would be harmed if she refused to have sexual intercourse with him. Mack also argues that the victim had "plenty of control" over the situation because she made Mack put on a condom before having sex, and that the victim's fear of the gun was negated by the fact that Mack did not have the gun when they had sex. In making these arguments, Mack is essentially stating that the victim's fear was not reasonable and, because it was not reasonable, it was not believable. But Mack's belief that her fear was unreasonable is immaterial. It was up to the jury, not Mack or this Court, to determine the credibility of the victim's testimony as to lack of consent and whether she did not resist because she was intimidated. *See Roberts v. State*, 242 Ga. App. 621, 624 (1) (a) (530 SE2d 535) (2000) ("It is . . . for the jury to determine whether the victim consented or whether any lack of resistance sprang from reasonable apprehension of great bodily harm, violence, or other dangerous consequences to herself or another.") (footnote and punctuation omitted); *Clark v. State*, 197 Ga. App. 318, 321 (3) (398 SE2d 377) 380 (1990) ("If it is reasonable to believe the victim did not consent in this case but complied out of fear, it is immaterial that the defendant

7

thought her fears were 'unreasonable.'"). The fact that the jury answered these issues adversely to Mack does not render the evidence insufficient. Because we conclude that the evidence was sufficient to show that Mack raped the victim, we need not address his alternative arguments about not being a party to the crime of Celestine's rape of the victim.

2. Mack also raises challenges to his conviction for aggravated assault, arguing that the evidence was insufficient to support that conviction and that the trial court erred in refusing to give a jury charge on the lesser included offense of pointing a firearm. We need not address these challenges to the aggravated assault conviction, because we vacate that conviction on the ground that it should have merged with his armed robbery conviction.

In his motion for new trial, as amended, Mack argued that his conviction for aggravated assault should have merged with his conviction for armed robbery. Although the trial court denied Mack's motion for new trial on all grounds, it concluded that the aggravated assault conviction should have merged into the armed robbery conviction, and stated that it would set a date for resentencing. The State notes that Mack filed his notice of appeal before the trial court scheduled a

8

resentencing hearing,[2] appropriately concedes that Mack's merger argument has merit, and requests that we remand the case for resentencing.

Here, Mack was charged with aggravated assault with a deadly weapon by pointing a handgun in the victim's direction. *See* OCGA § 16-5-21(b)(2). A conviction for aggravated assault with a deadly weapon merges into an armed robbery conviction. *See Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010). Therefore, his aggravated assault conviction must be vacated and the case remanded to the trial court for resentencing. *Id.* This conclusion moots Mack's arguments that the evidence was insufficient to sustain his aggravated assault conviction and that the trial court erred in refusing to give a charge on a lesser included offense of aggravated assault. *See id.* at 889-90 (2) (erroneous jury charge argument mooted when sentence was vacated on ground it should have merged with another conviction); *Wickerson v. State*, 321 Ga. App. 844, 848 n.6 (1) (743 SE2d 509) (2013) (insufficiency of evidence argument mooted when the sentence was vacated on merger ground).

---

[2] The filing of the notice of appeal divested the trial court of jurisdiction over the case. *See Brown v. State*, 322 Ga. App. 446, 448 (1) (745 SE2d 699) (2013) (the filing of a notice of appeal in a criminal case deprives the trial court of its power to execute the sentence and precludes the court from altering a judgment while the appeal from that judgment is pending).

*Judgment of conviction affirmed in part and vacated in part, sentence vacated, and case remanded with direction. Phipps, P. J., and Dillard, J., concur.*