**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

January 25, 2023

# In the Court of Appeals of Georgia

A22A1345. KIM v. THE STATE.

PER CURIAM.

After a jury trial, Austin Ou-Jay Kim was convicted of rape, aggravated sexual battery, two counts of aggravated sodomy, and misdemeanor sexual battery. Kim appeals from his convictions and the denial of his motion for new trial, contending that the evidence was insufficient to sustain his convictions and that he received ineffective assistance of counsel. We disagree and affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the record shows that in February 2017, Kim drove G. M. to a mutual friend's house to play a board game with several other people. Kim, G. M., and others drank alcohol at the house. That night, G. M. drank more than she ever had drunk. After the game ended, Kim offered

to drive G. M. home. G. M. felt sick and dizzy in the car. Kim pulled the car over, kissed G. M., touched her under her shirt, and inserted his fingers into her vagina. G. M. told Kim to stop. Kim stopped and drove G. M. to her home, but G. M. then asked if she could stay with Kim because she was sick, scared, did not want to be alone, and she trusted him as a friend. Kim drove them to his house. G. M. felt sick and tired, made it clear that she wanted to go to sleep, and laid on Kim's bed on the farthest side because she did not want Kim to touch her after what happened in his car. After falling asleep, G. M. was awakened multiple times by Kim performing sexual acts on her and forcing her to perform sexual acts on him. Specifically, G. M. woke up to Kim on top of her, taking off her pants, and penetrating her vagina with his penis. G. M. could not move or fight Kim, but told him "no" and "stop" before passing out.

G. M. later woke up as Kim had his hand in her hair and his penis in her mouth. G. M. could not breathe and tried to pull her head away, but Kim would not let her. G. M. fell back asleep. G. M. later woke up to Kim on top of her and behind her, and she felt something like semen on her back. Kim also touched G. M.'s breasts, touched her vagina with his mouth, and placed his fingers on or in her vagina. G. M. was scared and sick, and felt like she could not fight back. G. M. testified that she did not at any time consent to these acts.

2

G. M. woke up the next morning and vomited, and Kim began touching her again and tried to put his penis inside of her vagina. G. M. cried and told Kim to stop. Kim then drove G. M. to see her girlfriend. G. M. told her girlfriend and her parents what happened. G. M. then reported what happened to the police, identified Kim as the perpetrator, and went to the hospital where a sexual assault kit was completed. G. M. also later identified Kim as the perpetrator in a photo lineup.

Kim was arrested and charged with rape, aggravated sexual battery, two counts of aggravated sodomy, and two counts of misdemeanor sexual battery. A trial was held where G. M. and others testified. Kim was convicted on all six counts, with the trial court merging one of the misdemeanor sexual battery counts with an aggravated sodomy count at sentencing. Kim filed a motion for new trial, which was denied. Kim then filed this appeal.

1. Kim argues that the evidence was insufficient to sustain his convictions. We disagree.

> When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. In evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt.

3

*Fuller v. State*, 363 Ga. App. 217, 220 (1) (a) (871 SE2d 79) (2022) (citations and punctuation omitted).

(a) First, Kim contends that the evidence was insufficient to sustain his conviction for rape because the state failed to prove the elements of lack of consent and force and that the State improperly argued that G. M.'s inability to give consent could be used to impute the element of force in support of his conviction . "A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" OCGA § 16-6-1 (a) (1). "The terms 'forcibly' and 'against her will' are two separate elements of proving rape. The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death of physical bodily harm, or mental coercion, such as intimidation[.]" *Arellano-Campos v. State*, 307 Ga. App. 561, 562 (1) (705 SE2d 323) (2011) (punctuation omitted). "Lack of resistance, induced by fear, is force, and may be shown by the prosecutrix' state of mind from her prior experience with [the defendant] and subjective apprehension of danger from him." Id. at 565 (1) (punctuation omitted). "Further, force may be proved by direct or circumstantial evidence." Id. at 562 (1) (punctuation omitted).

4

In this case, G. M. testified that during the night she woke up on her stomach and felt Kim's penis penetrating her vagina and that she told him "no" and "stop" and that she did not consent to this. G. M. further testified that she was afraid and that she felt like she could not fight, move, or get away because G. M. was sitting on top of her while this was happening. Thus, there was independent evidence of both force and lack of consent. Based on G. M.'s testimony, the jury was authorized to find that G. M. did not consent to sex with Kim and that Kim used physical force or intimidation. *Mack v. State*, 338 Ga. App. 854, 856 (1) (792 SE2d 120) (2016) (the victim's testimony that she did not consent to sex and did not resist the defendant's directions to have sex because she was afraid was sufficient to sustain consent and force elements of defendant's rape conviction).

(b) Next, Kim argues that the evidence was insufficient to sustain his two aggravated sodomy convictions. Under OCGA § 16-6-2 (a) (2), "[a] person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person . . . ." And sodomy is defined as when a person "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1). "Therefore, the crime of aggravated sodomy has three elements: (1) an act of sodomy; (2) with force; and (3)

5

against the will of another." *Handley v. State*, 352 Ga. App. 106, 107 (834 SE2d 114) (2019).

Here, Kim contends that the evidence that he and G. M. engaged in sodomy while she was intoxicated is only evidence of constructive force, which cannot establish the element of force needed for the crime of aggravated sodomy. Kim also argues that the State failed to prove that G. M. did not consent to the acts. However, this Court has found in the context of aggravated sodomy that "[l]ack of resistance, induced by fear, is force." Id. at 108 (citation omitted). And, "evidence of a victim's inability to give consent can be used to impute the element of force in certain sexual abuse cases involving a victim who is intoxicated." Id. Kim was charged with two counts of aggravated sodomy, one count based on him placing his mouth on G. M.'s vagina forcibly and against her will and the second count based on Kim placing his sex organ into and upon G. M.'s mouth forcibly and against her will. At trial, G. M. testified that she woke up being choked by Kim's penis in her mouth while Kim held her hair, pushed her head down on his penis, and prevented her from moving her head away. G. M. further testified that she was scared, confused, and could not breathe. G. M. also testified that Kim placed his mouth on her vagina, and that she was scared and felt like she could not fight back. G. M. further testified that she did not consent

6

to these acts. Thus, there was sufficient evidence of force and lack of consent to support Kim's convictions for aggravated sodomy. See *Cross v. State*, 354 Ga. App. 355, 357-358 (1) (839 SE2d 265) (2020) (the victim's testimony that the defendant forced her to engage in oral sex against her will and prevented her from getting away was sufficient to sustain conviction for aggravated sodomy); *Brinson v. State*, 208 Ga. App. 556, 558 (4) (430 SE2d 875) (1993) (victim's testimony that the act of sodomy was committed with force and against her will was sufficient to prove that the defendant did not consent).

(c) Kim next argues that the evidence was insufficient to support his sexual battery and aggravated sexual battery convictions because the State failed to prove that Kim knew or should have known that G. M. did not consent.[1]

Under OCGA § 16-6-22.1 (b), "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." And "the term 'intimate parts' means the primary genital area, anus, groin, inner thighs, or buttocks

---

[1] Kim also contends, generally, that "[a]ll three charges" of rape, aggravated sodomy, and aggravated sexual battery "require the State to prove both 'force' and that the act was 'against the will' of the alleged victim." However, sexual battery and aggravated sexual battery do not require a showing of force. *Bully v. State*, 357 Ga. App. 663, 671 (4) n.14 (849 SE2d 271) (2020).

of a male or female and the breasts of a female." Under OCGA § 16-6-22.2 (b), "[a] person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." "[T]he term 'foreign object' includes not only inanimate instruments, but also a person's body parts, such as a finger." *Davis v. State*, 357 Ga. App. 720, 723 (2) (848 SE2d 173) (2020) (citation omitted).

Here, Kim's charge of aggravated sexual battery was based on his intentional penetration of G. M.'s sexual organ with his finger without her consent and the charge of sexual battery was based on his touching of her breasts without her consent. At trial, G. M. testified that Kim stopped the car while he was driving her home, touched her breasts, and inserted his fingers into her vagina. G. M. told Kim to stop. Later that night, Kim placed his fingers on or in G. M.'s vagina again. G. M. again told Kim to stop. Thus, this was sufficient evidence for the jury to determine that G. M. did not consent to Kim touching her vagina and breasts, and that Kim knew or should have known that she did not consent to such touching. See *Pate v. State*, 269 Ga. App. 684, 687 (2) (605 SE2d 90) (2004) (affirming convictions for aggravated sexual battery where the witnesses testified that the defendant penetrated their sexual

organs with his finger without their consent); *Hamrick v. State*, 304 Ga. App. 378, 379 (1) (696 SE2d 403) (2010) (affirming conviction of sexual battery).

2. Kim next argues that his trial counsel was ineffective for failing to challenge the constitutionality of OCGA § 16-6-1 (a) (defining rape), OCGA § 16-6-2 (a) (2) (defining aggravated sodomy), and OCGA § 16-6-22.2 (b) (defining aggravated sexual battery) as applied to him because the statutes are unconstitutionally vague in cases where the State relies on constructive force.

"To prevail on his claim of ineffective assistance of counsel, [Kim] must show both that his trial counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different." *Stewart v. State*, 311 Ga. 471, 476 (2) (858 SE2d 456) (2021) (punctuation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Debelbot v. State*, 308 Ga. 165, 167 (839 SE2d 513) (2020) (punctuation omitted). "Satisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance." *Snipes v. State*, 309 Ga. 785, 790-791 (3) (848 SE2d 417) (2020) (punctuation omitted). "In examining an ineffectiveness claim, a

9

court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Stewart*, 311 Ga. at 477 (2) (citation and punctuation omitted). And "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo." *Woodruff v. State*, 356 Ga. App. 659, 661 (848 SE2d 670) (2020) (citation and punctuation omitted). As we have noted, however, "the standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense." *Hughes v. State*, 266 Ga. App. 652, 655 (2) (a) (598 SE2d 43) (2004).

Kim has not cited, and we have not found, any case addressing similar constitutional challenges to these statutes. Kim's trial counsel's failure to raise these novel legal arguments does not amount to ineffective assistance of counsel. Id. And, in any event, the State's evidence supporting his convictions for rape and aggravated sodomy included G. M.'s testimony that Kim used actual force. Furthermore, there was no required showing of force to sustain Kim's conviction for aggravated sexual battery. *Bully*, 357 Ga. App. at 671 (4) n.14. Accordingly, the trial court did not err in denying Kim's motion for new trial based on ineffective assistance of counsel. See *Christopher v. State*, 262 Ga. App. 257, 264 (7) (585 SE2d 107) (2003) (trial

10

counsel's failure to challenge constitutionality of statute was not ineffective assistance where the argument did not apply to the facts of the defendant's case).

*Judgment affirmed. Division Per Curiam. All Judges concur.*